32   21
111  355
32   21
112  233
32   21
117  129
32   21
123  47
32   21
156  201
32   21
159  276
159  500
32   21
162  518

---

## CHARLES PETERSEN v. THE CHEMICAL BANK.

The assignee of a foreign executor may maintain an action in the courts of this State upon a chose transferred to such assignee by such foreign executor.

The disability of the foreign executor to sue in our courts does not attach to the subject of the action, but to the person of the plaintiff.

The title of the foreign executor to the assets of the estate existing in another country, is perfect, though conferred by the law of the domicile.

The executor, on accepting the trust, is vested with the title to all the movable property and rights in action which the deceased possessed at the time of his death, which title is perfect against all except creditors and legatees of the deceased.

When a plaintiff deriving title through a foreign executor, &c., is an unexceptional suitor in our courts, there is no rule of form or of policy to exclude him.

Reasons of form, and a solicitude to protect the rights of creditors and others residing within the jurisdiction where the assets are found, have led to the disability of foreign executors to sue in our courts.

It is no objection in a suit by the assignee of such executor, that the assignment was made to avoid the difficulty arising from the incapacity of such executor to sue.

THIS action was brought in the Superior Court of New York to recover the sum of $32,321.24, being an amount standing to the credit of Aaron Cohen, as a dealer on the

books of the defendants' bank in New York. Cohen died at the city of New Haven in Connecticut, on the 27th day of July, 1862. He left a last will and testament, executed in New York, on the 11th June, 1861, which was duly attested by two witnesses, by which he appointed David McCoard and Cohen M. Soria of New Orleans, executors. The will was proved and admitted to record in the Probate Court of the District of New Haven, in September, 1862; and the executors not appearing to qualify, and one of them having renounced, administration with the will annexed was granted to David J. Peck of New Haven, he giving a bond with several sureties, in the penalty of $200,000, conditioned to make an inventory, and to account, &c. He demanded of the defendants the above amount standing to the credit of Cohen, presenting an authenticated copy of his appointment, but payment was declined. He then, on the 2d December 1862, made a transfer under his hand and seal of the debt due from the defendants to the plaintiff in this action. The instrument is expressed to be in consideration of $32,321.24 received to the assignor's full satisfaction; and it contains proper words of sale and assignment, and a guaranty of the collection of the amount, and a promise to indemnify the plaintiff against loss by reason of the purchase. The plaintiff called at the bank with this instrument, presenting his own check and also that of Peck, and demanded the money. He also exhibited an instrument, signed by all the legatees named in the will, with the exception of one who resided in an insurgent State, and who was entitled to one-sixth of the residue, requesting that the money might be paid over to Peck as administrator; but the defendant persisted in refusing payment, on the ground, apparently, that it could not safely be paid, except to an administrator appointed under the laws of this State.

The controverted questions of fact to which the evidence on the trial was directed, related to the domicile of Cohen at the time of his death, and to the circumstances under which the transfers to the plaintiff were made. As to the first, it appeared that the testator was an unmarried man,

and that for some years before his death he resided during the summer at New Haven, and in the winter in New York, living at a hotel in both cities. When in New Haven he had a suite of apartments, being the whole of the first floor of one of the houses embraced in the hotel, in which his meals were served at a private table, and keeping his own horses, carriage and servants; but in New York taking his meals at the ordinary. He came from New York to New Haven in April preceding his death. His reasons for coming to New York in the winter, he declared to be the coldness of the climate in New Haven, and the fact that his apartments there were not well warmed. In his will he was described as "Aaron Cohen, gentleman, of the city, county and State of New York." His estate, amounting, so far as was known, to about one hundred thousand dollars, besides what he possessed in the city of New Orleans, of which no estimate was made, consisted of this money in the defendants' bank, and an interest in vessels sailing out of New York. It was proved by several witnesses, and it was not contradicted by any evidence, that some short time before his death, he had declared that his mind was fully made up never again to reside in New York, or to go there except for a few days. He had just purchased and paid down for a dwelling house for his residence, in New Haven, at the cost of $11,500. He had directed his confidential servant to write to a female friend of the latter to engage a cook, chambermaid and housekeeper for his house so purchased, and the letter was actually written shortly before his death; and he had moreover spoken to the servant about engaging a house carpenter to make some repairs on the house he had bought, and about providing coal for the ensuing winter. He had told him that he should have furniture purchased to the amount of $3,000, and mentioned a dealer in New York of whom he wished the purchase of furniture to be made. He declared expressly that he intended to live and die in New Haven, and wished to be buried there, and that after getting into his house, he would never live at a hotel again.

It was very clearly proved that he owed no debts in New York, and only a few very small sums in New Haven. The legatees in his will, besides $15,000 to a friend in New York, and $5,000 to another in New Orleans, and $5,500 to his servants, were his brothers and sisters in New York, New Orleans and Philadelphia.

In regard to the transfer, the evidence was that the plaintiff was one of the sureties of Peck in the administration bond, and had acted as his agent in the settlement of the estate. The consideration did not appear to have been paid absolutely. The amount was advanced by the plaintiff, and, together with other moneys of the estate, was deposited in a bank in the name of the plaintiff as trustee, he having, however, by the arrangement, no right to claim it, except by the direction of Peck, the intention apparently being that it should be paid out in the course of administration.

The defendant's counsel moved for the dismissal of the complaint, on the grounds that an action would not lie by an assignee of a foreign administrator; that there was no consideration for the transfer, and that it was made to evade the laws of this State, and that the Probate Court in Connecticut had not jurisdiction; and the counsel also insisted that the question as to the domicile of Cohen should, at least, be submitted to the jury. The motion was denied, and the judge instructed the jury to find for the plaintiff. The defendant's counsel excepted. It was directed that the exceptions be heard, in the first instance, at the General Term. The verdict was for the plaintiff for the amount claimed, with interest; and judgment for the plaintiff was rendered thereon at the General Term, upon which the defendant brought this appeal.

*R. B. Roosevelt,* for the appellant.

I. A foreign executor or administrator cannot commence suits in the courts of this State to collect the assets of the estate without first taking out letters of administration here. (*Vermilyea* v. *Beattie,* 6 Barb., 429; *Parsons* v. *Lyman,* 20

N. Y., 103; *Williams* v. *Storrs*, 6 Johns. Ch., 353; *Doolittle* v. *Lewis*, 7 id., 45; *Vroom* v. *Van Horn*, 10 Paige, 549; *Morrell* v. *Dickey*, 1 Johns. Ch., 153; *Brown* v. *Brown*, 1 Barb. Ch., 189.)

In the case of *Parsons* v. *Lyman*, above referred to, Judge Denio uses the following language: "As a result of this doctrine, it is now generally held everywhere, and it is well settled in this State, that an executor or administrator appointed in another State, has not, as such, any authority beyond the sovereignty by virtue of whose laws he was appointed." (*Graeme* v. *Harris*, 1 Dal., 456.)

II. This rule of law was in a measure founded upon the policy that every State felt it to be its duty to protect its own citizens when creditors of a decedent, against unfair preferences, vexatious delays, and extravagant.expenses that might arise from distribution in another sovereignty and under the foreign tribunals of a distant country. (*Lawrence* v. *Elmendorf*, 5 Barb., 73.)

"The ground upon which this doctrine has been established," says Mr. Justice Story, "is, that every nation has a right to dispose of all the property actually situate within it so as to protect itself and its citizens against the inequalities of foreign laws which are injurious to their interests." (Story's Conflict of Laws, §§ 524, 525; *Armstrong* v. *Lear*, 12 Wheat., 169.)

III. A further reason for this principle, is found in the difficulty that debtors would experience in determining the validity and effect of foreign appointments, often made by virtue of laws entirely different from those of their own country.

IV. The assignee of a foreign administrator stands in no better position than the administrator himself, who can confer no rights that he does not himself possess. And the reasons for the rule apply as well to him as to his assignor. (Story's Conflict of Laws, §§ 512, 513; *Chapman* v. *Fish*, 6 Hill, 554; *Thompson* v. *Wilson*, 2 N. H., 291.)

V. The transfer in this case was not *bona fide*, but merely colorable and to bring the case within a decision

of a court of this State at special term. The action must be brought in the name of the real party in interest. (Code, § 111.

VI. The payment to a foreign administrator would be no defense to a subsequent action by an administrator appointed in this State. (*Disosway, adm'r*, v. *Carroll, executor*, Court of Appeals, July, 1852; *Vaughn* v. *Barrett*, 5 Verm., 333; *Pond, adm'r*, v. *Makepeace*, 2 Metc., 114.)

"Decision of Court of Appeals, July 9, 1852. *Disosway, adm.* v. *Carroll, exr.*: An administration appointed, in this State, on the estate of a person who was domiciled and died in another State, leaving a will under which an executor duly qualified in the place of his domicile, though ancillary to the executor, has yet the legal title to *bona notabilia* existing in this State and collectible. here, which the executor cannot deprive him of by any release to the debtor or *transfer of the demand;* it not appearing but that there are creditors of the deceased resident in this State whose claim on the funds in the hands of the administrator would be superior to that of the executor or his assignee. Judgment reversed, with costs in the court below, and that the plaintiff have the relief prayed for." (*Stevens* v. *Gaylord*, 11 Mass., 256; *Vaughn* v. *Barrett*, 5 Verm., 333, and cases there cited; *Riley* v. *Riley*, 3 Day, 74.)

VII. The case of *Middlebrook* v. *The Merchants' Bank* (24 How. Pr., 267), although the authority which controlled the original decision of this case, does not seem to have been as carefully considered as its importance demanded. If the bequest in that case may be regarded as a specific bequest, the decision would be correct.

Story, Conflict of Laws, §§ 516 and 517. "§ 516: And here it is necessary to attend to a distinction important in its nature and consequences. If a foreign administrator has, in virtue of his administration, reduced the personal property of the deceased there situated into possession so that he has the legal title thereto, according to the laws of that country, if that property should afterward be found in another coun try, or carried and converted there against his will, he may

maintain a suit for it in his own name without taking out letters of administration; for he is to all intents and purposes the legal owner, although he is so in the character of trustee. And in like manner, if a specific legacy is bequeathed of property in a foreign country, and the legatee has, under an administration there, been admitted to the ownership, he may afterward sue in his own name for any injury or conversion of such property in another country where the property or party may be found, without any probate of the will there."

· VIII. The case of *Parsons* v. *Lyman* does not justify the payment to an administrator appointed at any place other than the testator's domicile; and in the present case the question of domicile should have been submitted to the jury.

IX. There is a distinction between executors and administrators, the former representing, in a certain degree, the deceased before letters are granted. (*Osgood* v. *Franklin*, 2 Johns. Ch., 1; *Valentine* v. *Jackson*, 9 Wend., 303; *Dixon's ex'rs* v. *Ramsay's ex'rs*, 3 Cranch, 319.)

X. By the laws of Connecticut the will was improperly proved, and the letters of administration were irregularly issued. (Statutes of Conn., 1854, pp. 485, 488 and 489.)

*William Bliss*, for the respondent.

I. The objection that the incapacity of the assignor to sue in our courts, attaches to the assignee, comes too late. It should have been taken by demurrer. (Code, § 144.) The character of the assignor, as derived under letters issued in another State, and the assignment from him to the plaintiff, are plainly stated in the complaint. The objection that the plaintiff has "no legal capacity" to bring this action, having been taken neither by demurrer nor answer, has been waived. (Code, §§ 147, 148.). Such waiver being by solemn acts of record is conclusive, and no averment can be received against it. *McBride* v. *The Farmers' Bank of Salem*, 26 N. Y., 457–459; *Robbins* v. *Wells*, 26 How. Pr., 15, see 17,

18, 20), which was the case of a supplemental complaint filed by a foreign administratrix; *Doolittle* v. *Lewis*, 7 Johns. Ch., 51; *Zabriskie* v. *Smith*, 13 N. Y. (3 Kernan), 322, 336; *The Bank of Lowville* v. *Edwards*, 11 How. Pr., 217; *The Bank of Havana* v. *Wickham*, 16 id., 101; *The Pres., &c., of Connt. Bank* v. *Smith*, 17 id., 488; *Hobart* v. *Frost*, 5 Duer, 627.)

In the sense of these sections of the Code, legal capacity to sue in our courts is not one of the facts necessary to constitute a cause of action. It relates to the character of parties, and forms no part of the subject of an action or of the question of jurisdiction. These are carefully distinguished. (Code, § 144; see *supra.*)

II. But this court has already decided that the assignee may sue in our courts when the assignor cannot. The want of capacity of the one does not attach to the other. (*McBride* v. *The Farmers' Bank of Salem*, 26 N. Y., 450. See Judge SELDEN's Opinion.) That case decides the present. It was that of the assignee of a non-resident suing a foreign corporation, where neither the cause of action arose nor the subject of the action was situated within this State. (Code, § 427.)

So, where a firm has given a promissory note to one of the partners, he cannot sue the firm on such note, but his indorsee can. (*Smith* v. *Lusher*, 5 Cow., 688; *Sherman* v. *Barton*, 36 Barb., 284; see Judge INGRAHAM's Opinion.)

A citizen of one of the United States cannot sue a citizen of the same State in the courts of the United States, but his grantee or assignee, being a citizen of another State, can sue the latter. (*Briggs* v. *French*, 2 Sumn., 251.)

And this, though the conveyance was made for the purpose of enabling the grantee to maintain a suit in the courts of the United States. A stranger not claiming under either of the parties, has no right to inquire into the motive of the conveyance. (Ib., 20 Johns., 482; 25 N. Y., 317.) It is no valid objection to the suit of a citizen of one State suing a citizen of another State in the courts of the United States, that the former changed his residence to the State of which

he is a citizen, for the purpose of availing himself of the jurisdiction of the federal courts, if the change of domicile be real and *bona fide.* (*Briggs* v. *French, supra; Lessee of Corpn.* v. *Galbraith,* 3 Wash. C. C. R., 546; *Case* v. *Clarke,* 5 Mason, 70; *Cartlett* v. *Pacific Ins. Co.,* 1 Paine, 594.)

A husband, surviving his wife, may be obliged to take out letters of administration to recover by action her choses in action, or her chattels in the possession of third persons, but it seems payment or delivery may be made to him without or before administration. (*Vallance* v. *Bausch,* 17 How. Pr., 245.)

And if he takes as husband, as is supposed in that case, his disposition without letters, it would seem, would vest the title in his vendee or assignee, who can sue.

Though a *feme covert* or infant be able to sue only by next friend (as formerly in equity and by the Code, § 114, but altered in 1857), or after the appointment of a guardian (Code, § 115), or a foreign corporation upon giving security (2 R. S., 457, § 1), the qualification or limitation of ability does not accompany the assignment of title or its transmission by death or otherwise.

Thus the legal capacity of an assignor to sue or to sue only in a particular way, or with a previous qualification or appointment, is not the measure of the legal capacity of his assignee, any more than that of the assignee is the measure of that of the assignor. The ability or disability is personal.

III. The statute prescribes who shall be plaintiffs and competent to sue.

Our Code of Procedure enacts that " every action *must be prosecuted* in the name of the real party in interest," with these exceptions (Code, § 111): " An executor or administrator, a trustee of an express trust " (including " a person with whom or in whose name a contract is made for the benefit of another "), " or a person expressly authorized by statute may sue, without joining with him the person for whose benefit the action is prosecuted." (Code, § 113. See also § 117.)

1. The persons excepted sue as official or other trustees by representation on behalf of their *cestuis que trust*, or by special authority of statute. (*Mead* v. *Mitchell*, 5 Abb., 106, DAVIES, J.; *Corning, Pres't*, v. *Greene*, 23 Barb., 33.)

2. The statute authorizes as well as requires the real party in interest to sue.

3. It repeals the doctrine of the common law, that choses in action are not assignable at law, and the restraints and consequences of that doctrine.

Or, if that form of expression be preferred, it enables the equitable assignee to sue at law in the same manner as if he had the legal title. He now has a title available at law.

This works important changes. Assignees, appointed under a foreign bankrupt law, can sue for a debt due here, but formerly they were obliged to sue in the name of the bankrupt, as a chose in action was not assignable at law. "It is a principle of general practice among nations to admit and give effect to the title of foreign assignees. * * But the mode of recovering the debts of the bankrupt will depend upon the forms of proceeding in the country and the forum in which he institutes his suit." (Per KENT, Ch. J., *Bird* v. *Caritat*, 2 Johns., 342.)

If the bankrupt were dead, a suit at law could of course be maintained in the name of his executor or administrator only, and letters must be taken out here.

But now the foreign assignees may sue in their own names as trustees of an express trust, as they might always in equity. So in Scotland. (*Bird* v. *Caritat, supra*, and cases cited.)

So they might sue as the holders of a bill of exchange. (*Bell* v. *Hunt*, 3 Barb. Ch., 391.)

IV. The grantee of an executor or administrator with the will annexed, who has obtained letters in another State, has a right to sue in the courts of this State for the protection or enforcement of his rights.

1. This has been expressly decided by the Supreme Court of this State (*Middlebrook* v. *The Merchants' Bank*, 24 How. Pr., 267; *S. C.*, 14 Abb., 462, and at Gen. Term, 27 How. Pr.,

474), and by the Supreme. Court of the United States, as to a chose of action (*Harper* v. *Butler*, 2 Peters, 239); and in Mississippi, in 1853, in *Andrews* v. *Cave* (26 Mis. [4 Cush.], 577), and as to the indorsee of negotiable paper in North Carolina, in *Grace* v. *Hannah*, (6 Jones [Law] N. C. R., 94; *Freeman* v. *Reister*, 3 Ind., 309.)

The principle is also contained in *Parsons* v. *Lyman*, (20 N. Y. [6 Smith], 103; *Smith* v. *Webb*, 1 Barb. S. C., 230.)

2. Administrators with the will annexed, "have the rights and powers, and are subject to the same duties, *as if they had been named in the will.*" (2 R. S., p. 72, § 22.)

" This statute has not been understood as introducing any new principle of law. (*Dominick* v. *Michael*, 4 Sandf. S. C., 409, 411; *Edgerton's adms.* v. *Conklin*, 25 Wend., 233." *Beekman* v. *Bonsor*, 23 N. Y. [9 Smith], 303.)

It is a re-enactment of the common law. (*Dominick* v. *Michael*, 4 Sandf. S. C., 410, 414.) Such an administrator is substituted trustee in a voluntary disposition of property.

So at common law, an administrator appointed during the minority of one entitled to administration, or if a man appoint an infant his executor, and that another shall have the administration during his nonage, such administrator has the power and authority of an absolute administrator or executor (Com. Dig., Admn., F.); the executor of an executor has the same interest in the goods of the first testator as the first executor. (Com. Dig., Administration, G.)

After the grant of letters, the title of every administrator relates back to the death of the decedent, from whom he directly takes title. (Com. Dig., Admn., B, 10; *Valentine* v. *Jackson*, 9 Wend., 302; *Babcock* v. *Booth*, 2 Hill, 181.)

An administrator, with the will annexed, has "the same *rights* and powers" as if he had been named as executor.

3. Receivers or trustees of the effects of an insolvent corporation of another State, appointed under the laws of such State, with power to take possession of all the effects of such corporation, and "to sell, convey and assign" its personal estate, have power to sell and assign a .debt due to the corporation from a citizen of this State, and such assignment

gives to the purchaser the equitable right of action in the courts of this State. (*Hoyt* v. *Thompson*, 5 N. Y. [1 Seld.], 320; *S. C.*, 19 N. Y., 307; *Matter of Bristol*, 16 Abb., 184, 186, 187; *Olyphant et al.* v. *Atwood*, 4 Bosw., 461.)

The powers of an executor or administrator are not less ample.

4. Assignees appointed under a foreign bankrupt or insolvent law may, on the ground of comity, sue and recover of the debtor of the bankrupt or insolvent in this State. Their title is perfect against such debtor, though as against a domestic attaching creditor or a *bona fide* purchaser without notice, who is a citizen of this State, it is unavailing. (Cases last cited; *Willitts* v. *Waite*, 25 N. Y. [11 Smith], 577, 584; Story's Conflict of Laws, §§ 412, 414.)

V. The owner of personal property has a right to dispose of it, either by an act taking effect in his lifetime, or by his last will and testament at his death. His disposition in either way, is effectual to vest the title, wherever the property may be situate and wherever may be the place of residence or domicile of such owner, or place of execution of such act or testamentary instrument. It is not merely the right, but it is "the duty" of his debtors to pay their debts "to him while living, and according to his appointment after his death." (*Parsons* v. *Lyman*, *supra*, p. 113.)

A voluntary transfer by the owner of personal property, wherever situated, is recognized wherever the common law prevails. (Story's Conflict of Laws, § 384; 25 N. Y., 584.)

A last will is in the highest sense such voluntary disposition. "And here it may be stated now," says Judge STORY, to be a well settled principle in the English law, "that a will of personal or movable property, regularly made according to the forms and solemnities required by the law of the testator's domicile, is sufficient to pass his personal or movable property in every country in which it is situated." * * "The same doctrine is now as firmly established in America." (Story's Conflict of Laws, §§ 465 to 468, and cases cited.)

The administrator, with the will annexed, comes in place of the executor, and takes by this comprehensive title, all

the " personal estate, goods and chattels " of the testator of what nature or kind soever.

VI. The administrator, with the will annexed, appointed under the laws of the State of Connecticut, where the testator lived and died, and where he left assets at his death, by virtue of the grant of letters to him acquired a valid title to the property of the testator in this State, which in the absence of letters in this State, any debtor or person in possession of such property, might safely recognize by the payment of debts or the delivery of such property, and the administrator having such valid title, was authorized to receive such payment and such property, and to give a sufficient receipt and discharge therefor. (*Parsons* v. *Lyman*, 20 N. Y. [6 Smith], 112 to 115; *Adams* v. *Smith*, 1 Atk., 63; *Doolittle* v. *Lewis*, 7 Johns. Ch., 45; *Vroom* v. *Van Horn*, 10 Paige, 549; *Brown* v. *Brown*, 1 Barb. Ch., 189; *Coley's Estate*, 14 Abb., 461; *Averill* v. *Taylor*, 5 How. Pr., 476.)

The defendant, instead of retaining this large sum without interest, should have performed its " duty " by prompt payment.

VII. " The legal title to all the personal property of the deceased, including choses in action, vests in administrators, as well as executors, and they can dispose of it at pleasure, being responsible for the faithful execution of the · trust." (*Beecher* v. *Buckingham et al.*, 18 Conn., 110; Same case and same point, 18 Conn., 120; *Perkins* v. *Stone*, 18 Conn., 276; *Smith* v. *Milles*, 1 Term, 480; Comyn's Dig., Administration, A; id., Administration, B, 10, 12.) .

" The right draws after it the constructive possession." (Per ASHURST, J., *Smith* v. *Milles*, *supra ;* Comyn's Dig., Administration, B, 10; *Valentine* v. *Jackson*, *supra ; Babcock* v. *Booth*, *supra.*)

This legal title, extending to all the property of the deceased, extends to that without the State. It is the title of the executor or administrator to the property out of the State, which only renders payment or delivery to him, or his discharge valid. In *Shultz* v. *Pulver* (11 Wend., 363, [Court of Errors]), an administrator appointed in this State

was held responsible for a neglect to collect in Pennsylvania a debt due to the intestate by a debtor residing in that State. He was, therefore, entitled to collect it. In *Perkins* v. *Stone* (18 Conn., 270, 276), the personal representative appointed in Connecticut sued a resident of Massachusetts, in whose hands in the last mentioned State bills receivable were for collection and conversion into money at the decedent's death, for negligence by which a part of the moneys secured by said bills was lost, such resident of Massachusetts having subsequently come into Connecticut. The plaintiff recovered and the recovery was held right.

In Massachusetts it has been held, that where the payee of a promissory note, which is made by one citizen of that State to another citizen of that State, indorses it specially to a citizen of another State, who dies and whose will is admitted to probate in the latter State before the note falls due, and his executor, without taking administration in the State of Massachusetts, sends the note to a notary public in that State, with directions to demand payment at the maturity of the note and give notice to the indorser, and such notary makes demand and gives due notice to the indorsers, such *demand* and notice are sufficient. The foreign executor is entitled to receive payment. (*Rand* v. *Hubbard*, 4 Metc., 252.)

"An executor appointed in another State, where the testator resided, with power to sell bank shares in this State, the property of the deceased, may do so without the aid of a Probate Court of this State, if it can be done without legal process, and an administrator appointed here cannot recover the dividends of the bank which have been paid to the purchaser from the foreign executor." 1847. (*Hutchins* v. *State Bank*, 12 Metc., 422, a case which in its application to the present has great persuasiveness and force.)

When the principal administrator at the intestate's domicile in a foreign country, allots to a party as his next of kin divers things in action existing here, and makes a transfer of the same as far as practicable, such party is entitled to receive the things in action from the administrator here, in

the absence of creditors claiming the fund. (*Suarez* v. *Mayor, &c., of N. Y.,* 2 Sandf. Ch., 173.)

Executors duly appointed in another State have a right, it seems, to take charge of and control personal property of the testator situated in New York, where there is no conflicting grant of letters. (*Brown* v. *Brown,* 1 Barb. Ch., 189.)

Prerogative administration extends to personal property "in any country." (Exch. Cham., *Whyte* v. *Rose,* 3 Ad. & El., N. S., 498, 507; *Scarth* v. *Bishop of London,* 1 Hagg. Eccles., 625.)

All these cases recognize the title of the personal representative who has received letters in one State to personal property of the decedent situated elsewhere, and expressly or impliedly his power of disposition.

2. If the right of the executor or administrator were limited to the jurisdiction within which he was appointed, he could not sell or dispose of goods at sea, nor insure them, for he could have no insurable interest, if they were on the high seas at the death of the decedent and grant of letters.

3. The numerous cases as to the transmission of assets from one jurisdiction and one administrator to another, recognize the completeness and universality of the title of the foreign executor or administrator. The assets thus transmitted form part of the estate, vested in the administrator by the grant of administration, or in the executor by the death of the testator. (See also *Evans* v. *Tatem,* 9 Serg. & Rawle, 258; *Swearingen's ex'rs* v. *Pendleton,* 4 id., 392; *McNamara* v. *Dwyer,* 7 Paige, 239; *Gulick* v. *Gulick,* 33 Barb., 92.)

VIII. An executor or administrator *represents* the person of the intestate, and so far as the title of personal property is concerned, stands in his stead, being his "assignee in law." (Co. Lit., 209, A.; Comyn's Dig., Chancery, 3 G, 1; id., Administration, B, 11 and 12; *Schultz* v. *Pulver,* 11 Wend., 363.)

IX. The administrator, with the will annexed, thus representing the person of the testator, and having vested in him the title of all his property, had a right to dispose of it.

(*Nugent* v. *Gifford*, 1 Atk., 463; *Mead* v. *Orrery*, 3 Atk., 237, see p. 239.)

The sale in the present case was made within the ·jurisdiction in which the administrator was appointed. A purchaser from an executor is not bound to ascertain whether a sale is proper or not. (*Cole* v. *Miles*, 17 English Law and Equity, 582.)

A creditor has only a personal demand and no lien upon the assets, and where an assignment is for valuable consideration, it is good both at law and in equity, unless fraud ·is proved. (1 Atk., 463; 3 Atk., 239.) And a stranger cannot impeach it. (20 Johns., 482; 25 N. Y., 317; 2 Sumn., 251.) But there were no debts in this State. (Fols. 105–106, 139.)

The defendant cannot defend against a just debt by the bare suggestion of the possibility of a creditor of his creditor.

X. The testator was domiciled in the State of Connecticut. So the probate record states. Both the fact and the intention concurred. The weight of the evidence is so strong that the jury would have found the fact at once, and if it had been otherwise, and such finding had been material, the verdict would have been set aside. (1844, N. Y. Com. Pleas, *Matter of Crawford*, 3 N. Y. Leg. Obs., 76; 1849, *Isham* v. *Gibbons*, 1 Bradf., 69; *Cambridge* v. *Charlestown*, 13 Mass., 561; *Putnam* v. *Johnson*, 10 Mass., 433; *Chaine* v. *Wilson*, 1 Bosw., 673; *S. C.*, 16 How., 522, and 8 Abb., 78; *Barry* v. *Bockover*, 6 Abb. Pr., 374; *Houghton* v. *Ault*, 16 How. Pr., 77.)

There was indeed no conflict of evidence.

But domicile was not essential to confer jurisdiction on the Court of Probate in Connecticut, assets were sufficient. Full faith and credit is to be given to the probate of the will in sister State, " to the public acts, records and judicial proceedings." (Const. U. S., Article 4, sec. 1; 2 R. S., p. 67, § 68 [§ 82, 4th ed.] Laws of 1840, ch. 384, § 2 [2 R. S., p. 249, § 62, 4th ed.]) So as to letters of administration or letters testamentary (2 R. S., p. 69, § 31.) Indeed the bank book, the evidence of debt against the bank, came into the possession of the administrator in Connecticut, as a part of

the assets of the estate, and was there, with a balance struck by the bank itself, delivered to the plaintiff.

XI. The plaintiff having thus acquired title to the money deposited in the bank, had a right to demand payment of it and to sue for it. (*Harper* v. *Butler*, 2 Peters, 239 ; *Middlebrook* v. *Merchants' Bank*, supra ; *Andrew* v. *Cave*, supra.)

That an executor or administrator, appointed in another State, cannot sue in the courts of this State, without first taking out letters here, has no application. The rule itself is of restricted application. Probate before hearing is sufficient. (*Osgood* v. *Franklin*, 2 Johns. Ch., 1.) Executors appointed in another State may sue in this, when they claim, not as executors, but as residuary legatees or purchasers, and this, although the assent of the executor is required to every legacy to perfect the title of the legatee. (*Smith* v. *Webb*, 1 Barb. S. C., 230.)

So he may sue on a contract with himself as executor. (*Lawrence* v. *Lawrence*, 3 Barb. Ch., 71 ; *Trotter* v. *White*, 10 Sm. & M., 607 ; *Bright* v. *Currie*, 5 Sandf. S. C., 437.)

An administrator may bring trover in his own name, for the goods of his intestate, converted previous to the grant of administration, and need not declare in his representative character. (*Valentine* v. *Jackson*, 9 Wend., 302 ; *Babcock* v. *Booth*, 2 Hill, 100.)

An executor may bring trover or trespass, *as he may alien the goods of his testator*, before probate. (Comyn's Dig., Administration, B, 9 ; 9 Wend., 303.)

An administrator may sue in his own name on a cause of action in respect to the assets, arising since the death of the decedent. (*Holbrook* v. *White*, 13 Wend., 591.)

An executor or administrator, who has been appointed in another State, and as such has recovered judgment there, may maintain an action on the judgment in the courts of this State. (*Talmadge* v. *Chapel*, 16 Mass., 71 ; 3 Barb. Ch., 74 ; 5 Sandf. S. C., 437.)

Foreign administrators may sue on notes payable to bearer. (*Robinson* v. *Crandall*, 9 Wend., 425 ; *Bright* v. *Currie*, supra ; *Patchen* v. *Wilson*, 4 Hill, 57.)

2. The rule rests on the mere personal disability of the executor or administrator to prosecute or defend, in his representative character, without the previous ceremony or qualification of probate and letters in this State. (*Doolittle* v. *Lewis*, 7 Johns. Ch., 51; *Holmes* v. *Remsen*, 4 id., 472; *Pipon* v. *Pipon*, Amb., 25; *Thorne* v. *Watkins*, 2 Ves. Sen., 35; *Smith* v. *Milles*, *supra*.)

3. A person deriving title from an executor or administrator is not within the terms of the rule, nor its reason. He is not a foreign executor or administrator, and is under no disability to sue in our courts.

4. He sues to vindicate and enforce his own rights, not those of the administrator, and on a cause of action arising since the assignment.

5. Such a person cannot compel the administrator, with the will annexed, to take out letters in this State, and, if he did, he could not sue, because he has parted with his interest. (Code, § 111.) The former must therefore sue.

6. But the cases of *Harper* v. *Butler*, in the Supreme Court of the United States, and *Middlebrook* v. *The Merchants' Bank*, *supra*, and other cases cited, show that the disability of the foreign executor or administrator does not extend to the person deriving title from him.

7. The cases rest on this distinction: "The foreign law furnishes the rule of decision as to the validity of the title to the thing claimed," but "it can only be asserted by the legal *instrumentalities*, which the institutions of the country, where the claim is made, have provided. (*Parsons* v. *Lyman*, *supra*, p. 112.)

8. There is no evasion of our laws, which have no extra-territorial force, but a submission to them by a conversion by sale, instead of a collection by suit.

XII. There is no principle of public policy, which should prevent the assignee from suing.

1. The rule as to foreign executors and administrators is formal and technical. Lord HARDWICKE observed, and Ch. KENT cites the observation with approbation, that taking a foreign probate or letters of administration in the country

where the property is situated was but "for form," and to enable the party to sue. (*Thorne* v. *Watkins*, 2 Ves. Sen., 35; *Holmes* v. *Remsen*, 4 Johns: Ch., 472; *Doolittle* v. *Lewis*, 7 id., 51; *Smith* v. *Milles, supra.*)

At common law, in ordinary actions of contract, profert of letters testamentary or of administration, must be offered and oyer might be demanded and must be given. (Stephen on Pl., 66–69, 437; *Commercial Bank* v. *Sparrow*, 2 Denio, 97; 1 Chit. Pl., 360, 420, 6th Lond. ed.) Such profert it is said, was to enable the court, by inspection, to determine the sufficiency of the instrument. (*Leyfield case*, 10 Rep., 92 b; Co. Lit., 356.) But the court had no judicial knowledge of the seals and certificates of foreign letters, or their authority, and on trial by inspection, or on demurrer, the action would fail.

Comyn says, that an executor may maintain trespass or trover before probate, "for there a profert of letters testamentary is not necessary."

He might commence an action of contract, but could not declare before probate, for then profert was necessary.

2. If the person having foreign letters can, in the absence of letters here, receive the payment of debts, and the delivery of property, and give a valid discharge within this State (*Parsons* v. *Lyman, supra*); if he can sue on the negotiable securities of the decedent, payable to bearer or indorsed in blank (9 Wend., 425); if he can demand payment on notes or bills of exchange, payable to the decedent or specially indorsed to him (*Rand* v. *Hubbard, supra*); if he can indorse them so as to give the indorsee the title and consequent right of action in another State (*Grace* v. *Hannah, supra*); if he can allot bonds, situate within this State, to the next of kin (2 Sandf. Ch., 173); if after the recovery of judgment in his representative character, in his own State, he can sue on such judgment in another (16 Mass., 71); if he can assign and transfer stock in a bank here (*Middlebrook* v. *Merchants' Bank, supra*), and sue in his own name in trover and trespass, it is difficult to see what principle of policy should prevent him from selling a chose in action and

his assignee bringing suit. (*Hutchins* v. *State Bank*, 12 Metc., 421.)

3. Public policy requires that effect should be everywhere given to the will of the owner, except as against the paramount claims of creditors, without his estate being burdened with unnecessary expense. Where there are no domestic letters, and no liens of domestic creditors, there is no objection to the withdrawal of assets or their proceeds from the State.

4. Between States united under one government, where the judgments in each are conclusive in all, and full faith and credit is to be given to the records and judicial proceedings of each, the highest comity should be observed.

Denio, Ch. J. The evidence was quite conclusive that the domicile of Cohen at the time of his death, was at New Haven. The purchase of an expensive dwelling house for his residence, the measures taken to furnish it with servants, and to repair and supply it with furniture and fuel, and the intention to make it his permanent abode for the remainder of his life were shown by positive evidence which was wholly uncontradicted. Upon this evidence there was no question for the jury, and if a verdict had been returned involving a denial of its effect, it would have been at once set aside. If it be conceded that, prior to these acts, and this manifestation of intention, it was equivocal whether his residence was at New York or New Haven, it was no longer so, after he had provided himself with a residence in the latter city, with the absolute determination permanently to occupy it. It follows that the Probate Court of the district which embraced the city of New Haven had jurisdiction. The record of that court admitting the will to probate, and appointing an administrator upon the default of the executors named in it to appear and qualify, was, by force of the Constitution and laws of the United States, entitled to full faith and credit in the courts of this State.

A foreign executor or administrator (and one appointed under the laws of a sister State of the Union is foreign in

the sense of the rule), cannot sue in his representative character in the courts of this State.  The question whether a party deriving title to a chose in action by transfer from such an executor or administrator, can prosecute the debtor residing here, in our courts, has been variously decided in the cases to which we have been referred.  In the Supreme Court in the first district, the Merchants' Bank of New York was sued for refusing to transfer to the plaintiff one hundred shares of its stock, to which the latter made title by transfers from the executors of one Robert Middlebrook, in whose name the stock stood on the books of the bank.  He died at his residence in Connecticut, and his will had been proved, and letters testamentary had been issued by the Probate Court of the proper district in that State.  The plaintiff was a legatee of a certain amount of the testator's stock, and the shares in controversy had been assigned to him in satisfaction of the legacy.  The court held that the executors became vested with the title to the stock, and that the plaintiff, though he derived his title under them, could enforce his right against the bank in our courts, and judgment was accordingly given in his favor. (*Middlebrook* v. *The Merchants' Bank*, 27 How. Pr. 474; *S. C.*, at Special Term, 24 id., 267.)

A different rule has been established in the courts of New Hampshire and of Maine. (*Thompson* v. *Wilson*, 2 N. H., 291; *Stearns* v. *Burnham*, 5 Greenl., 261.)  In each of these cases the defendant was sued as the maker of a promissory note, by parties claiming as indorsees under indorsements by the executors of the payees who were respectively residents of Massachusetts, and whose wills were proved and letters thereon issued in that State.  The defendants prevailed in each case, on the objection that the respective plaintiffs were subject to the same disability to sue which would have attached to the executors if they had attempted to prosecute in another State than that under whose laws their letters testamentary were granted.  In the first case the judgment was placed upon the English ecclesiastical law, by which probates of wills and grants of administration are void when

not made by the *ordinary* of the proper diocese, a doctrine which I do not think applicable to questions arising between different States, as it makes no allowance for the principles of international comity. In the case in Maine, it was thought that allowing a recovery would be an indirect mode of giving operation in Maine to the laws of Massachusetts, and also that the effects of the deceased might thereby be withdrawn from the State, to the prejudice of creditors residing there.

The precise case now before us came before the Supreme Court of the United States in *Harper* v. *Butler* (2 Peters, 239). The suit was brought in Mississippi, on a chose in action, originally existing in favor of a citizen of Kentucky, who died there, and whose executor having letters testamentary issued in that State, assigned it to the plaintiff. In Mississippi, choses in action are assignable so as to permit the assignee to sue in his own name, as is now the case in this State. The question arose on demurrer to the complaint, and the District Court sustained the demurrer. The judgment was reversed upon a short opinion by Chief Justice MARSHALL, which merely states the point, and contains no general reasoning. No counsel appeared on behalf of the defendant.

The case in Maine has been made the subject of comment in Story's Treatise on the Conflict of Laws (§§ 258, 259), and is decidedly disapproved by the learned writer. He says, that upon the reasoning of the case a promissory note would cease to be negotiable after the death of the payee, which, he observes, would certainly not be an admissible proposition.

It seems clear to me that there are no precedents touching the question which are binding upon this court, or which can relieve it from the duty of examining the question upon principle. There are certain legal doctrines, now very well established, which have a strong bearing upon the point. It is very clear, in the first place, that neither an executor or administrator, appointed in a foreign political jurisdiction, can maintain a suit in his own name in our courts. Foreign laws have no inherent operation in this State; but it is not

on this account solely or principally that we deny foreign representatives of·this class a standing in our courts. The comity of nations, which is· a part of the common law, allows a certain effect to titles derived under and powers created by the laws of other countries. Foreign corporations may become parties to contracts in this State, and may sue or be sued in our courts on contracts made here or within the jurisdiction which created them. The only limitation of that right is the inhibition to do anything in its exercise which shall be hostile to our own laws or policy. (*Bank of Augusta* v. *Earle,* 13 Pet., 519; *Bard* v. *Poole,* 2 Kern., 495, 505, and cases cited.) And yet nothing can be more clearly the emanation of sovereign political power than the creation of a corporation. Again, the receivers of insolvent foreign corporations, and assignees of bankrupt and insolvent debtors, under the laws of other States and countries, are allowed to sue in our courts. It is true their titles are not permitted to overreach the claims of domestic creditors of the same debtor, pursuing their remedies under our laws; but in the absence of such contestants they fully represent the rights of the foreign debtors. (Story's Conf. Laws, § 112; *Hoyt* v. *Thomasen,* 1 Seld., 320; *S. C.,* 19 N. Y., 207; *Willets* v. *Waite,* 25 N. Y., 584.) It is not therefore because the executor or administrator has no right to the assets of the deceased, existing in another country, that he is refused a standing in the courts of such country, for his title to such assets, though conferred by the law of the domicile of the deceased, is recognized everywhere. Reasons of form, and a solicitude to protect the rights of creditors and others, resident in the jurisdiction in which the assets are found, have led to the disability of foreign executors and administrators, which disability, however inconsistent with principle, is very firmly established. We have lately decided that if the debtors of the deceased will voluntarily pay what they owe to the foreign executor, such payment will discharge the debts, and the moneys so collected will be subject to the administration of such foreign executor. (*Parsons* v. *Lyman,* 20 N. Y., 103.)

But the principle of law which I think governs this case is, that the succession to the personal estate of a deceased person is governed by the law of the country of his domicile at the time of his death. This is so whether the succession is claimed under the law providing for intestacy or for transmission by last will and testament. (See *Parsons* v. *Lyman, supra,* and authorities cited at p. 112.) It is not so held because the foreign legislature or the local institutions have any extra territorial force, but from the comity of nations. Accordingly, it is a necessary supplement to the doctrine that, if the law-making power of the State where the property happens to be situated, or the debtor of the deceased reside, to subserve its own policy, has engrafted qualifications or restrictions upon the rights of those who would succeed to the estate by the law of the domicile, they must take their rights subject to such restrictions. One of the most natural, as well as the most usual of these qualifications is that which is intended to secure the creditors of the deceased residing in the county where the assets exist. It is in part to subserve this policy that the personal representatives are not permitted to prosecute the debtor or parties who withhold his effects in our courts. But the protection to the creditor is further secured by the remedy which is provided by allowing them to take out administration in the jurisdiction where the assets are. If the deceased have any relatives in this State who would be preferably entitled, they can be summoned, and if they elect to take out letters themselves, they will be compellable to give bond, and the creditors will be then made secure in their rights, or if the relatives refuse to assume that responsibility, then the creditors may themselves be appointed, and thus qualified to take possession of the assets here upon the same terms. (2 R. S., 73, §§ 23, 24.) If the debtors of the estate elect to pay to the former representative, or to deliver to him the movable assets, before the granting of administration in this State, the domestic creditors are put to the inconvenience of asserting their rights in the courts of the country of their debtor's domicile against his representa-

tives appointed under the laws of that country, just as they would have been compelled to do if all his effects had been situated there. Another general principle of law necessary to be adverted to is, that the executor of a testator, as soon at least as he has clothed himself with the commission of the Probate Court, is vested with the title to all the movable property and rights of action which the deceased possessed at the instant of his death. The title of the executor, it is true, is fiduciary and not beneficial. That title is, however, perfect against every person except the creditors and legatees of the deceased. The devolution of ownership is direct to the representative, and the beneficiaries take no title in the specific property which the law can recognize. An administrator with the will annexed, has the same rights of property as the executor named in the will would have had if he had qualified. (2 R. S., p. 72, § 22.)

The law of maintenance while it existed, prohibited the transfer of the legal property in a chose in action, so as to give the assignee a right of action in his own name. But this is now abrogated, and such a demand as that which is asserted against the defendant in this suit may be sold and conveyed so as to vest in the purchaser all the legal, as well as the equitable rights of the original creditor. (Code, § 111.) Though such demands are not negotiable in precisely the same sense as commercial paper, since the assignee is subject to every substantial defense which might have been made against the assignor, yet where, as in this case, no such defense exists, the transfer is absolute and complete. The title which is vested in the executor carries with it the *jus disponendi* which generally inheres in the ownership of property. "It is a general rule of law and equity," says Judge Williams, in his treatise on executors, "that an executor or administrator has an absolute power of disposal over the whole personal effects of his testator or intestate, and that they cannot be followed by creditors, much less by legatees, either general or specific, into the hands of the alienee." (Treatise, p. 796; see also *Whale* v. *Booth*, 7 Term R., 625, in note to *Farr* v. *Newman ; Sutherland* v. *Breesh,*

7 Johns. Ch., 17; *Rawlinson* v. *Stone,* 3 Wils., 1; *Harper* v. *Butler, supra.*)

It follows that the plaintiff presented himself to the Superior Court as the owner by purchase and assignment of the debt against the defendant, from a person holding the title and hence having authority to sell. He claimed to recover, not as the representative of any other party, but as the substituted creditor of the defendants' bank. He had, it is true, to make title through the will of Cohen, and the proceedings of the Probate Court of Connecticut. But the validity of that title depended upon the law of Connecticut, that being the place of the domicile of the former owner of the demand. The validity of every transfer, alienation or disposition of personal property depends upon the law of the owner's domicile. (Story on Conf. of Laws, § 383.) In the absence of proof to the contrary, we assume the law of Connecticut respecting the alienation of choses in action to be the same as our own. If Cohen had, at his death, been a resident of this State, and his administrator with the will annexed had sold and assigned to the plaintiff his demand against the bank, there is no manner of doubt but that the assignee, upon the refusal of the bank to pay the amount, could have maintained this action.

Hence there is not, I think, any reason why the plaintiff should be precluded from maintaining his action, on account of his making title through a foreign administration. The rule is not that our courts do not recognize titles thus acquired. It is simply that a foreign executor or administrator can have no standing in our courts. The plaintiff does not occupy that position. He sues in his own right and for his own interest, and represents no one. In my opinion, the disability to sue does not attach to the subject of the action, but is confined to the person of the plaintiff. If he is an unexceptionable suitor, and there is no rule of form or of policy which repels him from our courts, he is to be received, and he may make out his title to the subject claimed, in any manner allowed by law; and it has been shown that title acquired through a foreign administration is universally respected by the comity of nations.

It is pretty obvious from the evidence of the circumstances of the transfer by Peck to the plaintiff, that its object was to avoid the objection which might be taken if Peck had sued in his own name as administrator, without taking out letters here.   There was no other conceivable motive for the plaintiff to purchase this moneyed demand payable immediately, for its precise amount paid down.   If his check on the bank, drawn shortly after the transfer, had been answered, he would have received the precise amount he had parted with, and the transaction at the best would have been paying with one hand to receiving the same amount back with the other. If he failed to realize the amount, he was to be indemnified by Peck.   This circumstance, and the manner in which the assumed consideration was disposed of, would doubtless have led the jury to find, that the form adopted was resorted to in order to enable the administrator to avail himself of the balance in the defendant's bank, without taking out administration here.   Still, as between the plaintiff and Peck, the interest in the demand passed.   Peck would have been estopped by his conveyance under seal, containing an acknowledgment of the payment of the consideration, from setting up that nothing passed by the conveyance.   I am of opinion that the defendant cannot make a question as to the consideration.   If all the parties had been residents of this State, a transfer of the demand, good as between the parties to that transfer, would have obliged the defendant to respond to the action of the transferee.   Then if we hold, as I think we should, that the objection to the suit of the administrator was in the nature of a personal disability to sue, and not an infirmity inhering in the subject of the suit, the fact that the transfer was made for the purpose of getting rid of the objection, should not prejudice the plaintiff.   The cases which have been referred to upon this point have considerable analogy.   The Constitution and laws of the United States confer upon the courts of the Union, jurisdiction in suits between citizens of different States, with an exception contained in an act of Congress, of one suing as the assignee of a chose in action, of a party whose residence was such as

not to permit him to sue. In an action by an assignee concerning the title to land, which was not within the exception, it was held not to be an objection which the defendant could take, that the assignment was made for the purpose of removing the difficulty as to jurisdiction. (*Briggs* v. *French*, 2 Sumn., 251.) In a late case in this court against a foreign corporation, which could not be prosecuted here except by a resident of this State, unless the cause of action arose here or the subject of the action was situated here, it was held that the objection — that the assignment of the demand by one not qualified by his residence to sue, to the plaintiff who was thus qualified, was made for the purpose of avoiding the difficulty — could not be sustained. (*McBride* v. *The Farmers' Bank*, 26 N. Y., 450.)

I have not thus far referred to the circumstance, that Cohen was shown not to have owed any debts in this State. That fact was proved as strongly as in the nature of the case such a position could be established. The administrator, whose business it was to ascertain the existence of debts, and the confidential servant of Cohen who was very familiar with his transactions, affirmed that there were none; and the defendant gave no evidence on the subject. The motive of policy for forbidding the withdrawal of assets to the prejudice of domestic creditors, did not therefore exist in this case. Still, if the rule is that neither the foreign administrator or his assignee can maintain an action in our courts to collect a debt against a debtor residing here, on account of its tendency to prejudice domestic creditors, the exceptional features of the present case would not change the principle. It would often be more difficult than in this case to disprove the existence of such debts. But I am of opinion that the objection should be regarded as formal, and that it does not exist where the plaintiff is not a foreign executor or administrator but sues in his own right, though his title may be derived from such a representative.

I am in favor of affirming the judgment of the Supreme Court.

POTTER, J.   The evidence that the domicile of the testator, Aaron Cohen, was at New Haven, Connecticut, was sufficient, I think, to authorize the probate of his will in the court of that State.   The probate when so made is at common law conclusive, and cannot be collaterally questioned, while it remains unreversed or unrepealed. (*Allen* v. *Dundas*, 3 T. R., 125; *Colman* v. *Sarrell*, 1 Ves., 54.) Upon the issue in the pleadings in this case, as to the place of domicile of the testator, there does not seem to me to be sufficient evidence to have authorized a jury to find it was in New York; and it was no error in the judge at the trial, that he refused to submit that as a question of fact to the jury; besides, I think it was an immaterial issue.   Jurisdiction of the probate of the will having been obtained in the Connecticut court, as well by the fact of domicile there, as by the possession of assets; and the due authentication of the probate and letters being shown, the will was evidence of the conference of title of the personal property of the testator to the executor, in every country where it was situated. (Story's Conflict of Laws, § 465, and authorities cited.) "The executor has the property of the goods of the testator vested in him before probate. (Comyn's Dig., Administrator, B, 9.) He has the property of the goods vested in him before actual possession. (Id., B, 10.) He may alienate them before probate. (Id., B, 9.) This power is now restricted by our statute (2 Rev. Stat., 71, § 16, marginal paging), until after letters testamentary are granted.   We are to presume in the absence of proof, that the Connecticut statute is the same as our own. The executor may receive payment, and give sufficient discharges for moneys due. (*Parsons* v. *Lyman*, 20 N. Y., 103.) If money be due or payable to the testator, the executor shall have action for it; he represents the person of his testator. (Com. Dig., B, 11.) And so upon any contract made with his testator. (Id.) These rights and powers, however, to bring the action or to enforce his rights, under the authority of his letters testamentary, is limited to the sovereignty, by virtue of whose laws he receives his appointment. *Parsons* v. *Lyman*, (20 N. Y., 112); but this case also holds, that an

executor having letters in Connecticut in the absence of let-
ters here, can receive payment of debts, take the delivery of
property, and give a valid discharge within this State.   The
case of *Robison* v. *Crandall* (9 Wend., 426), holds, that a
suit on a note payable to bearer, could be sued upon here in
the individual name of the administrator to whom letters of ad-
ministration had been granted in Pennsylvania, on the ground
that he was the real owner of the note; though he could not
sue here in his representative character.   In the case of
*Middlebrook* v. *The Merchants' Bank* (24 How. Pr., 267),
it was held at Special Term, "that an executor who has
obtained probate and letters testamentary in Connecticut,
where he resides, can dispose of the testator's property in this
State without taking out ancillary letters here.   In *Smith* v.
*Miles* (1 T. R., 480), ASHURST J., held, that the right to
property in the executor was immediate upon the death of
the testator, and the right draws after it constructive posses-
sion; that probate was the mere evidence of right; and in
*Hutchins* v. *State Bank* (12 Metcalf, 421), it was held, that
an executrix having probate and letters granted in New
Hampshire could sell and transfer stock in a bank in Massa-
chusetts, without having the will allowed and recorded in the
latter State.   The action in this case is not brought by
the executor, and the authority of the executor is only in
question so far as to determine what I think is the real point
in this case, to wit, can the executor within the State of
Connecticut, alien a demand, due to his testator from a per-
son living in this State, so that the alienee, or assignee, can
bring an action in his own name?   1. I know of no statute
restraint upon the right of alienation in this State, none was
shown to exist in Connecticut, and restraints have never
been favored at common law.   " It is a rule of common law
that the power of alienation is an inseparable incident to the
right of property, for the law knows of no such anomaly as
the right of property without the absolute and universal
power of disposal. (Bell on Husband and Wife, 504.) In
*Fettiplace* v. *George* (1 Ves.; 49), Lord THURLOW said, "the
moment property can be enjoyed, it must be enjoyed with

all its incidents." And Lord COKE cites a Latin maxim, the translation of which is, "that it is unjust that freemen should not have the free disposal of their own property." (Co. Litt., 223, a.) This right of alienation or right to sell is not more free and unrestricted than the right to purchase. This assignment constituted a legal transfer of the claim in question to the plaintiff, the fact being found by the jury. 2. What then are the plaintiff's rights, as the legal owner of this claim? Since choses in action are made assignable by statute, the action need not be brought in the name of the executor, but must be brought in the name of the party in interest. (Code, §§ 111, 112, 113.) · The action is then brought in the right name. The assignee, of course, has purchased the claim subject to all equities which the defendants had against the assignor, but no equities are claimed against it by the defendants. The objection, that the assignee had no right to sue until he showed himself qualified, is not an equity set up against the demand. The objection to the qualification of the executor might be true; he could not sue a demand in Connecticut until he obtained his letters testamentary there; he probably cannot sue in this State without ancillary letters obtained here; but all this has nothing to do with the validity or the equities of the demand itself. The defendants set up no equities against the demand itself, nor against the testator by counterclaim, recoupment or offset. They stand in no relation of trustees for the creditors of the testator residing in this State, if any there were. They are bound to pay their liability, whenever a person lawfully authorized to discharge it presents it for payment. The personal disability of the executor to sue is no defense to this action when brought by one against whom no such disability exists. This was settled by the late case of *McBride* v. *Farmers' Bank* (26 N. Y., 450.) The principle established in that case is, I think, conclusive of this. This claim in this case is conceded to be just; there is no legal or equitable defense to it on the merits; it was legally assigned to the plaintiff; he holds it absolutely; he is under no legal disability to sue. The principle insisted on by the defendants, " that the assignee

of a foreign executor stands in no better position than the executor himself, who can confer no rights that he does not himself possess," is true so far as the merits of the question, or the absolute rights of others are concerned, and so far as the act of the executor or the rights of his assignee shall come in conflict with the local policy or laws of this State, or with the rights of its citizens. No such conflict appears to me to exist in this case.

I am of opinion that the judgment should be affirmed.

Judgment affirmed.