## Case No. 6,893.

### HUNT et al. v. JACKSON.

[5 Blatchf. 349;[1] 6 Am. Law Reg. (N. S.) 169.]

Circuit Court, S. D. New York. Aug. 9, 1866.

BANKRUPTCY—FOREIGN ASSIGNEE—RIGHT TO SUE.

1. The rule in the courts of the state of New York is, that while the right of a foreign assignee in bankruptcy, as respects the assets of the bankrupt, must yield to the claims of creditors of the bankrupt seeking the aid of those courts, such foreign assignee may, as the representative of the bankrupt, sue to collect the

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

assets of the bankrupt, to the same extent as the bankrupt could have sued if no bankruptcy had taken place.

[Cited in Cuykendall v. Miles, 10 Fed. 343.]

[Cited in Re Waite, 99 N. Y. 448, 2 N. E. 440.]

2. Such rule was applied by this court, in a suit brought therein by a foreign assignee in bankruptcy, to collect an asset of the bankrupt's estate.

This was a demurrer to a bill in equity. The plaintiffs [Frederick Hunt and others] were aliens, and assignees in bankruptcy, under the laws of Great Britain, of one Golding, an insolvent merchant of London. The defendant [Abraham J. Jackson] was a citizen of the state of New York, residing in the city of New York. The material allegations of the bill were, that the bankrupt, Golding, before his bankruptcy, carried on business as a merchant in London; that, on the 21st of April, 1864, he consigned to the defendant, a merchant in New York, an invoice of diamonds, of the value of £1,-227.12.6, for sale on commission; that the diamonds duly came into the defendant's possession, at New York; that, on the 8th of August, 1864, at London, Golding was, in the court of bankruptcy, duly adjudicated a bankrupt; that, on the 30th of the same month, the plaintiffs were appointed creditors' assignees, whereby the bankrupt's estate became vested in them; that, on the same day, one Henry Honey, of London, was, at a meeting of the creditors, appointed manager, to collect and wind up the estate of the bankrupt; that, on the 1st of September, 1864, Honey wrote to the defendant, on behalf of the plaintiffs, requesting him to remit the proceeds of the diamonds sold, and return those unsold; that, on the 30th of September, 1864, the defendant wrote to Honey, in reply, that all the diamonds remained unsold, and that he would return them as Honey might direct, on receiving the amount of his outlay and expenses, amounting, as he said, to £264.14.4½; that no account of such outlay and expenses was rendered; and that the plaintiffs had repeatedly requested an account, but the defendant had omitted to render it. The prayer of the bill was, for an account and discovery of the expenses, and that, upon payment to the defendant of such a sum as might be found to be justly due to him for expenses, &c., on account of the diamonds, he might be ordered to surrender them to the plaintiffs. The ground of the demurrer was, in substance, that the plaintiffs, as assignees under a foreign bankrupt law, had no legal capacity to institute and maintain the suit.

Christopher C. Langdell and Edward B. Merrill, for plaintiffs.

Aaron J. Vanderpoel and Edmon Blankman, for defendant.

SHIPMAN, District Judge. The right of foreign assignees in bankruptcy to maintain suits in the courts of this country, and the extent of that right, if any exists, have been repeatedly and elaborately discussed, both by elementary writers and in judicial opinions. Great diversities of views have been expressed, and different results reached in different cases. No advantage would be gained by a rehearsal of these discussions here. In nearly all of the cases where the rights of the foreign assignees have been contested, there has been a conflict between their alleged rights and the claims of other parties, citizens or residents of our own country, or aliens, pursuing remedies in our own courts, against the assets of the bankrupt. But, in the language of Mr. Justice Story, in his Conflict of Laws (section 420): "In most of these cases in which assignments under foreign bankrupt laws have been denied to give a title against attaching creditors, it has been distinctly admitted, that assignees might maintain suits in our courts under such assignments, for the property of the bankrupt. This is avowed, in the most unequivocal manner, in the leading cases in Pennsylvania and New York, already cited, and it is silently admitted in those of Massachusetts." This statement of the law is cited and concurred in by Ruggles, C. J., in Hoyt v. Thompson, 1 Seld. [5 N. Y.] 320, 19 N. Y. 207, decided by the New York court of appeals, in 1851; and Paige, J., in an opinion delivered in the same case, remarks: "Where neither the rights of domestic creditors, or of foreign creditors proceeding against the property under our laws, are involved, the foreign assignee may be permitted to sue in our courts, for the benefit of all the creditors, on principles of national comity, without a surrender of the principle, that a foreign statutory assignment does not operate a transfer of property in this state." The result of the cases was accurately stated by Mr. Justice Story, and citations might be multiplied from judicial opinions which, while they deny the right of the foreign assignee where it conflicts with the claims of creditors seeking the aid of our own courts, almost invariably concede his capacity to sue as the representative of the bankrupt, to the same extent as the latter could have sued if no bankruptcy had taken place. This, as already shown, was evidently the judgment of the New York court of appeals when the case of Hoyt v. Thompson was decided.

The only doubt which has been raised as to the correctness of this view of the law, so far as I know, has originated from the remarks of the judges in the cases of Mosselman v. Caen, 34 Barb. 66, and Willitts v. Waite, 25 N. Y. 577. But the former case was disposed of on another ground. The latter followed Hoyt v. Thompson, and, as an authority, goes no farther than that case. See Judge Allen's opinion, page 587. It is true, that the same judge (page 586), after stating that, "the rule as settled in this state

and in the United States, is that, in cases of assignment by operation of law. the assignees are in the same situation as the bankrupt himself, in regard to foreign debts," and that "they take subject to every equity and subject to the remedies provided by the law of the foreign country where the debt is due and the property is situated," adds: "The reasoning of our courts would, doubtless, carry the rule further, and prohibit assignees under foreign bankrupt laws from suing in our courts." The rule has never been carried to this point, by the courts of New York, in any decision where the precise question was necessarily involved. I certainly shall not lead the way in that direction, and should hesitate somewhat before I followed. The demurrer is overruled, with costs.