In the Matter of the Accounting of CHARLES WAITE, Jr., as Assignee, etc.

The statutes of foreign States have no force or effect in this State *ex proprio vigore*, and hence, the statutory title of foreign assignees in bankruptcy can have no recognition here solely by virtue of the foreign statute.

By the comity of nations, however, such a title is recognized and enforced when it can be done without injustice to the citizens of the State, and without prejudice to creditors pursuing their remedies here under our statutes; provided, also, such title is not in conflict with the laws or public policy of the State, and the foreign court had jurisdiction of the bankrupt.

A New York city firm made an assignment for the benefit of creditors to W., a member of the firm of P. & W., which firm was a preferred creditor; it did business in New York and London. W. resided in the former city, and had charge of the firm business there; said firm became insolvent; W. went to England, and there he and his partner filed a petition in a court of bankruptcy, in accordance with the laws of that country. A composition with creditors having failed, on their application, which was opposed by W., he and his partner were adjudged bankrupts, and S. was appointed receiver, and subsequently trustee of the firm property. By the English Bankruptcy Act the due appointment of the trustee transfers to him title to all the personal property of the bankrupt wherever situated. W. continued to act as assignee, and on settlement of his accounts as such, credited himself with the amount coming to his firm under the preference in the asssignment. S. appeared on the accounting, objected to the credit, and claimed that the same should be paid over to him. It appeared that all the American creditors of the firm of P. & W. had been paid out of other assets. The credit was allowed. *Held* error; that W. having invoked and submitted to the jurisdiction of the English court, was bound by its adjudication; that it was competent for S. to appear upon the accounting to protect the interest of the bankrupt estate he represented; that he was entitled to the sum due to it, and W. was bound to make payment to him.

The authorities upon the subject of the rights of foreign statutory trustees collated and discussed.

*Abraham* v. *Plestoro* (3 Wend. 538), *Johnson* v. *Hunt* (23 id. 87), distinguished and limited.

*Mosselman* v. *Caen* (34 Barb. 66; 4 T. & C. 171), overruled.

(Argued June 16, 1885; decided October 6, 1885.)

APPEAL by William Schofield, trustee, etc., from order of
the General Term of the Court of Common Pleas in and for
the city and county of New York, made March 20, 1885, which
affirmed an order of Special Term overruling exceptions to and
confirming a referee's report on the accounting of Charles
Waite, Jr., as assignee for the benefit of creditors of James C.
Haynes and Orlando B. Sawyer.

The material facts are stated in the opinion.

*Payson Merrill* for appellant.  As the English bankruptcy
proceedings, which resulted in adjudicating Pendle & Waite,
bankrupts, and appointing Schofield their trustee in bank-
ruptcy, were voluntary proceedings instituted by the bankrupts
themselves, Schofield is vested with the title to the firm
estate, not by virtue of a foreign law, acting purely *in invi-
tum*, but by a proceeding which is tantamount to a voluntary
assignment.  (Blumensteil on Bankruptcy, 404.)  Schofield,
the English trustee in bankruptcy, took title to the money in
controversy by virtue of his appointment, and can assert that
title against the bankrupt in the courts of this State. (*Bird* v.
*Caritat*, 2 Johns. 341; *Holmes* v. *Remsen*, 4 Johns. Ch. 464;
20 Johns. 229; *Lombard Bk.* v. *Thorp*, 6 Cow. 46; *Plestoro*
v. *Abraham*, 1 Paige, 236; 3 Wend. 540; *Hoyt* v. *Allen*, 5
N. Y. 320; *Kelly* v. *Crapo*, 16 Wall. 610; 31 Barb. 603;
*Lowry* v. *Hall*, 2 Watts & S. 129; *Merrick's Estate*, 5 id. 20;
Story's Conflict of Laws, § 420; *Matter of Bristol*, 16 Abb.
Pr. 184; *Johnson* v. *Hunt*, 23 Wend. 91; *Willetts* v. *Waite*,
25 N. Y. 577; *Peterson* v. *Chemical Bk.*, 32 id. 21; *Hiber-
nia Bk.* v. *Lacombe*, 84 id. 367; *Runk* v. *St. John*, 29 Barb.
585; *Barclay* v. *Quicksilver M. Co.*, 6 Lans. 25; *Hooper* v.
*Tuckman*, 3 Sandf. 311; *Olyphant* v. *Atwood*, 4 Bosw. 459;
*Harrison* v. *Sterry*, 5 Cranch, 289; *Ogden* v. *Saunders*, 12
Wheat. 213; *C. S. Ry. Co.* v. *Gebhard*, 109 U. S. 527;
*Hunt* v. *Jackson*, 5 Blatchf. 349; *Ex parte Norwood*, 3 Biss.
504; *May* v. *Breed*, 7 Cush. 42; *Sanderson* v. *Bradford*, 10
N. H. 264; *Dunlop* v. *Rogers*, 47 id. 281; *Goodsell* v. *Ben-
son*, 13 R. I. 223.)  The rule that the law of the domicile

governs the transfer of personal property applies in this case. (*Guillander* v. *Howell*, 35 N. Y. 657; *Williams* v. *Ingersoll*, 89 id. 508.) The circumstances of this case make the strongest possible appeal to the court for the application of the principle of comity. (*Edgerly* v. *Brush*, 81 N. Y. 199; *Warner* v. *Jaffrey*, 96 id. 248; *Ockerman* v. *Cross*, 54 id. 29.)

*William Blaikie* for respondent. Even if Schofield's appointment as trustee was regular, it gave him no title to assets in the United States. (*Mosselman* v. *Caen*, 4 T. & C. 173.) Waite was adjudged a bankrupt in involuntary proceedings. (*Crowe* v. *Lewin*, 95 N. Y. 426; *O'Brien* v. *Young*, id. 430.) No court can obtain jurisdiction of the subject-matter, by consent of parties. (*Coffin* v. *Tracy*, Col. & Cairns, 470; *Dakin* v. *Deming*, 6 Paige, 95; *Heyer* v. *Burges*, Hoffm. Ch. 1; *McMahon* v. *Rauser*, 47 N. Y. 67; *People* v. *Hartwell*, 2 Park. 32; *People* v. *Campbell*, 4 id. 386; *Willets* v. *Waite*, 25 N. Y. 584; Story's Confl. of Laws, §§ 378, 380, 381.) Waite's domicile has always been, and is now, in the United States. (4 Barb. 509; 17 Pick. 231; Story's Confl. of Laws, 344; Abbott's L. Dict. 397; *Kelly* v. *Crapo*, 45 N. Y. 90; *Hunter* v. *Potts*, 4 Term R. 97.) A foreign trustee deriving his title by operation of law, or by adjudication of a court, has no right or title to any property of the bankrupts in this State. (*Holmes* v. *Remsen*, 20 Johns. 264; *Hoyt* v. *Thompson*, 19 N. Y. 208; *Willets* v. *Waite*, 25 id. 584; *Kelly* v. *Crapo*, 45 id. 86; *Osgood* v. *Maguire*, 61 id. 529; *Hunt* v. *Jackson*, 5 Blatchf. 349; *Harrison* v. *Sterry*, 5 Cranch, 20; *Milne* v. *Moreton*, 6 Bin. 353; *Taylor* v. *Gear*, 1 Kirb. 313; *Ogden* v. *Saunders*, 12 Wheat. 213; *Plestoro* v. *Abraham*, 1 Paige, 236; 2 Kent's Com. 406, 407; Lawrence's Wheaton, p. 11, chap. 11, § 18; Wheaton's Confl. of Laws, § 4; *Johnson* v. *Hunt*, 23 Wend. 91; *Mosselman* v. *Caen*, 4 T. & C. 173; 34 Barb. 66; *Baldwin* v. *Hale*, 1 Wall. 234; *Willink* v. *Renwick*, 23 Wend. 65; *Raymond* v. *Johnson*, 11 Johns. 488.) Pendle had no authority to assign Waite's interest in the partnership. (Bishop on Insolvent Debtors, 121; *Welles* v. *Marsh*, 30 N. Y. 344;

*Adne* v. *Cornell*, 25 Hun, 78; *Welter* v. *Seleleiper*, 6 Abb. Pr. 123; *Fisher* v. *Murray*, 1 E. D. Smith, 341; *Pettee* v. *Orser*, 6 Bosw. 123; *Havens* v. *Hussey*, 5 Paige, 30; *Gates* v. *Andrews*, 37 N. Y. 657.) It was the duty of Waite, as assignee of Haynes & Sanger, to follow strictly the directions of the deed of assignment. (*In re Lewis*, 81 N. Y. 424; Bishop on Insolvent Debtors, § 229; *Osgood* v. *Maguire*, 6 N. Y. 529.)

EARL, J. On the 15th day of October, 1881, Haynes & Sanger, a firm doing business in the city of New York, having become insolvent, made a general assignment, for the benefit of their creditors, to Charles Waite, who was a member of the firm of Pendle & Waite, and in their assignment preferred that firm as creditors for a large amount. Pendle & Waite did business in New York and London, Waite being a citizen of this country residing in the city of New York and having charge of the business of his firm there, and Pendle being a citizen of England and having charge of the firm business there. That firm became insolvent and suspended business in England in February, 1882, and Waite then went to England, and there he and Pendle filed a petition in the London Court of Bankruptcy, in which they recited their inability to pay their debts in full, and that they were "desirous of instituting proceedings for the liquidation of their affairs by arrangement or composition with their creditors, and hereby submit to the jurisdiction of this court in the matter of such proceeding." Waite signed the petition in person, and through his counsel at once secured the appointment of Schofield as receiver, in bankruptcy, of the firm property.

Liquidation by arrangement or composition is a proceeding under the English Bankruptcy Act which provides that the filing of such a petition is an act of bankruptcy; that a compromise proposition may be made by a debtor, and that if such proposition shall be accepted by the creditors at a general meeting, and then confirmed at a second general meeting, and registered by the court, it becomes binding and may be carried out under the supervision of the court; that if it appears to

the court 'on satisfactory evidence that a composition cannot in consequence of legal difficulties, or for any other sufficient cause, proceed without injustice or undue delay to the creditors, or the debtor, the court may adjudge the debtor a bankrupt and proceedings may be had accordingly, and that the title of the trustee in bankruptcy, when appointed, relates back to the time of the commission of the act of bankruptcy.

For reasons which it is unnecessary now to consider or relate, the composition failed, and then upon the application of creditors, which was opposed by Waite, Pendle & Waite were adjudged bankrupts, and Schofield was appointed trustee of the firm property. By the English law, the due appointment of a trustee in bankruptcy, under the English Bankruptcy Act, transfers to the trustee all the personal property of the bankrupt wherever situated, whether in Great Britain or elsewhere.

Notwithstanding his bankruptcy, Waite continued to act as assignee of Haynes & Sanger and converted the assets of that firm into money, and under the preference given to his firm paid himself for the firm of Pendle & Waite the sum of $14,333.70. He paid no portion of that sum to Pendle or to the creditors of his firm, the American creditors of such firm having been fully paid from other assets of the firm.

After all this, Waite filed his petition in the Court of Common Pleas of the city of New York for a settlement of his accounts as assignee, and citations were issued, served and published for that purpose, and a referee was appointed to take and state his accounts. In his accounts he entered and claimed a credit for the sum paid to himself as above stated. Schofield, through his attorney, appeared upon the accounting and as trustee objected to the credit and claimed that sum should be paid to him. The referee ruled that the law of this State does not recognize the validity of foreign bankruptcy proceedings to transfer title to property of the bankrupt situated here, and for that reason held that the payment by Waite, as assignee, to himself as a member of the firm of Pendle & Waite, was valid, and that he was entitled to the

credit claimed. The same view of the law was taken at the Special and General Terms of the Common Pleas, and then Schofield appealed to this court.

We have stated the facts as found by the referee, and as the respondent did not and could not except to the findings, and is therefore in no condition to complain of them, we must assume that they were based upon sufficient evidence.

The transfer of the property of Pendle & Waite to Schofield as trustee was *in invitum*, solely by operation of the English Bankrupt Law. While the proceeding first instituted by the bankrupts to arrange a composition with their creditors was voluntary, the final proceeding through which the adjudication in bankruptcy was had, and the trustee appointed was adversary and against their will, having no basis of voluntary consent to rest on. (*Willitts* v. *Waite*, 25 N. Y. 577.)

If the transfer effected by the bankruptcy proceedings is to have the same effect here as in England, then the title to the money due to the bankrupts from Haynes & Sanger was vested in the trustee. Schofield was appointed receiver of the property of the bankrupts in March, 1882, and then the title passed out of them. That title continued in him as receiver until he was appointed trustee. After he was appointed receiver and before or after he was appointed trustee (which does not appear), Waite as assignee paid himself as a member of the firm of Pendle & Waite the sum of money in controversy. He had notice of the bankruptcy proceedings and knew that the title to the money due from Haynes & Sanger and from himself as their assignee had passed out of the bankrupts to Schofield, and hence he had no right to make payment to them. Schofield became substituted in their place, and Waite was bound to make payment to him, and cannot, therefore, have credit for a payment wrongfully made. And Schofield, standing in the place of the original creditors of Haynes & Sanger, had the right to appear upon the accounting and object to the erroneous payment made in disregard of his rights. But the alleged payment was merely formal, not real. Waite, the assignee, still has the money and is accountable for it to the proper

party.   It is not perceived how it can be claimed that Scho-
field was bound at any time before the accounting to make any
demand upon the assignee.   He was a creditor holding the
claim originally due to Pendle & Waite, and as such he could
appear upon the accounting, with all the rights of any other
creditor, to protect his interests, and he could not be prejudiced
by a payment alleged to have been made by the assignee to
himself.   All this is upon the assumption that the transfer to
Schofield as trustee is to have the same force and effect here as
against the bankrupts as in England; and whether it must
have, is the important and interesting question to be deter-
mined upon this appeal.

It matters not that Waite was a citizen of this country, dom-
iciled here.   He went to England and invoked and submitted
to the jurisdiction of the Bankruptcy Court there and is bound
by its adjudication to the same extent as if he had been domi-
ciled there.   The adjudication estopped him just as every party
is estopped by the adjudication of a court which has jurisdiction
of his person and of the subject-matter.

We have not a case here where there is a conflict between
the foreign trustee and domestic creditors.   So far as appears
no injustice whatever will be done to any of our own citizens,
or to any one else, by allowing the transfer to have full effect
here.   Indeed justice seems to require that this money should
be paid to the foreign trustee for distribution among the foreign
creditor of the bankrupts.

The effect to be given in any country to statutory *in invitum*
transfers of property through bankruptcy proceedings in a for-
eign country has been a subject of much discussion among
publicists and judges, and unanimity of opinion has not and
probably never will be reached.   We shall not enter much into
the discussion of the subject and thus travel over ground so
much marked by the foot-steps of learned jurists.   Our main
endeavor will be to ascertain what, by the decisions of the
courts of this State, has become the law here.

In *Bird* v. *Caritat* (2 Johns. 342), it was held that a suit
could be brought in this State in the name of a foreign bank-

rupt by his assignees for their benefit as such, the name of the
bankrupt being used, because by the common-law rule, now
abrogated, a *chose in action* was not assignable so as to entitle
the assignee to sue thereon in his own name. In writing the
opinion Chancellor KENT, then chief justice, said: " The de-
murrer to the second plea raises the question whether the
assignees under a commission of bankruptcy sued out in England
can maintain a suit at law here in their own names. This is
more a question concerning form than substance, for there can
be no doubt of the right of the assignees to collect the debts
due to the bankrupt either by a suit directly in their own names
or as trustees using the name of the bankrupt. It is a principle
of general practice among nations to admit and give effect to
the title of foreign assignees. This is done on the ground that
the conveyance under the bankrupt laws of the country where
the owner is domiciled is equivalent to a voluntary conveyance
by the bankrupt." In *Raymond* v. *Johnson* (11 Johns. 488),
it was held that although the court will recognize and protect
the right of an assignee under the insolvent law of another
State, yet an action brought in this State must be in the name
of the insolvent. In *Holmes* v. *Remsen* (4 Johns. Ch. 460),
Chancellor KENT wrote an elaborate opinion holding that foreign
assignees in bankruptcy took title to all the property of the bank-
rupt, wherever situated, with the same force and effect as if
the bankrupt had made a voluntary assignment of his property,
and that such a title was good even against subsequent attach-
ing creditors in a country other than that where the bankruptcy
adjudication was had and the statutory transfer was made, and
he said: " It is admitted in every case that foreign assignees
duly appointed under foreign ordinances are entitled as such to
sue for debts due to the bankrupt's estate." In *Holmes* v.
*Remsen* (20 Johns. 229), the suit was between the same parties
and involved the same questions, and the effect of the foreign
bankruptcy proceeding was again elaborately considered by
PLATT, J., and he gave expression to views in reference thereto
differing from those of Chancellor KENT which have been fol-
lowed in most of the subsequent cases in this State upon the

same subject.    He held that a statutory assignment of a debtor's property under the laws of a foreign country is not equivalent to a voluntary assignment by the debtor, and that such an assignment will not hold good here to the prejudice of the rights of domestic creditors pursuing their remedy by attachment under our laws.    But he admitted that foreign assignees appointed in bankruptcy proceedings could by the rules of international courtesy and comity come here and institute suits in our courts to recover the property of the bankrupt when the interests of creditors pursuing their remedy under the local laws were not brought in question or prejudiced.    He adopted in substance the views of Mr. Caines, the learned lawyer who, arguing for the attaching creditors in both cases between the same parties, said : " We admit that the bankrupt assignment passes all the property of the bankrupt, here and everywhere, provided always that there are no creditors here having claims on that property.    We admit the right of the assignees of the bankrupt to collect his property here and take it to England, if there are no creditors of the bankrupt here ; but not other-wise.    If there are creditors attaching here there is a *conflictus legum* and the foreign law must yield."    The other judges declined to express any opinion upon the questions mainly considered by Judge PLATT, but concurred with him upon a minor point not involved here, and upon that point the case was decided.    In *Plestoro* v. *Abraham* (1 Paige, 236), the facts were these :  Abraham, a British subject domiciled in England, in July, 1828, left that country for the United States, bringing with him certain personal property, and arrived in New York about the 1st of September, when the goods were deposited in the public store under the charge of the defendant Thompson as collector of the port.    Shortly after Abraham left England a commission in bankruptcy was taken out against him there by virtue of which he was duly declared a bankrupt ; and on the 8th day of August, Johnson, one of the complainants, was appointed by the commissioners provisional assignee.    On the 24th day of September, 1828, the complainants, the provisional assignee and the creditors of Abraham, all of whom were British

subjects and residents of England, filed their bill and obtained an injunction restraining the collector from delivering the goods to Abraham, and restraining the latter from receiving or prosecuting for the same. Abraham put in his answer neither admitting nor denying the proceedings under the commission, but alleging that he left England in the lawful pursuit of his business with a *bona fide* intention of returning, and denying that he was insolvent or had committed any act of bankruptcy. Chancellor WALWORTH denied a motion to dissolve the injunction, and held that the assignee could have maintained the action alone without joining the creditors; and in his opinion, referring to the decision of Chancellor KENT in *Holmes* v. *Remsen*, he said that it was "doubtful whether that decision to its full extent can be sustained," that "it was strongly questioned and ably opposed by PLATT, J.," in the subsequent case between the same parties, and that it stood opposed to the opinions of the State courts in various cases cited; but he held that the case before him steered clear of all the decisions cited, because in those cases the contest was between foreign assignors and domestic creditors, claiming under the laws of the country where the property was situated, and the suits were brought, while in that case the controversy was between the bankrupt and his assignee and creditors, all residing in the country under whose laws the assignment was made, and the property itself, at the time of the assignment, was constructively within the jurisdiction of that country being on the high seas in the actual possession of a British subject. That case was taken by appeal to the Court of Errors (3 Wend. 538), where the order of the chancellor was reversed. It is claimed by the counsel for the respondent and was so held by the court below in this case, that the Court of Errors held in that case that the statutory assignment in England was wholly inoperative here, and that the foreign assignee, therefore, was not vested with the title to the property here even as against the bankrupt. We are of opinion that it was not so held, and that the point was left undecided by that case. MARCY, J., writing an opinion for affirmance in which SUTHERLAND, J., concurred, expressed

views similar to those announced by PLATT, J., in *Holmes* v. *Remsen*, and held that the foreign assignee could sue in our courts, and that his title to the property was good as against the bankrupt. Senator ALLEN, writing an opinion, held that the order should be reversed on the ground that an injunction was not the proper remedy, and we cannot discover that he intimated any opinion as to the important question discussed by MARCY, J., and in *Holmes* v. *Remsen* by Chancellor KENT and PLATT, J.; and no definite views upon the same question were expressed by Senator MAYNARD in the opinion read by him. He said: "The cases, therefore, in which it has been held that an assignment did not transfer the property of a bankrupt in a foreign country appear to me not applicable to the case now under consideration." And further: "If the assignment in this case did operate a transfer of the property in question, what need is there of the aid of a Court of Chancery to enable the assignee to obtain possession of it? If by virtue of the assignment the assignee acquired a *legal title* to the property, the courts of law are abundantly competent to afford equitable relief." Senator OLIVER, also writing for reversal, said: "The question is not whether a foreign assignee shall be permitted to sue in our courts; in relation to that there can be but one opinion. Had the proceedings in bankruptcy in this case been perfected the bankrupt acquiescing in their justice and propriety, and the assignee substituted in his place, and a question had arisen between him and a debtor of the estate, no one would have doubted or questioned the right of the assignee to sue in our courts." But he held that the title of the foreign assignee was not good here as against the bankrupt himself unless he chose to acquiesce in it, and he also reached the conclusion that even if the title of the assignee were good here, an injunction was not a proper remedy. Senator STEBBINS writing for reversal held that the statutory transfer in England could have no operation here, and that, therefore, the foreign assignee did not have title to the property, and that even if he did have title an injunction was not the proper remedy. Senator THROOP wrote for affirmance holding that the title of the

foreign assignee was good as against the bankrupt, and that an injunction was a proper remedy. No other opinions were written. Justices MARCY and SUTHERLAND and Senators THROOP and WOODWARD voted for affirmance, and seventeen senators for reversal. It does not appear, and cannot be ascertained upon what ground the fourteen senators who voted for reversal, writing no opinions, based their votes. Some may have concurred in the result upon one ground and some upon another. The most obvious ground, in which all who voted for reversal seemed to concur, was that an injunction was not a proper remedy. That case has been much criticised by judges and text-writers, and the imposibility of determining what was adjudicated by it has frequently been recognized. In *Johnson* v. *Hunt* (23 Wend. 87), one Hollis and Johnson and Miller were residents of Chenango county in this State. Hollis absconded, and a warrant of attachment was issued against him as an absconding debtor. After notice of the attachment had been published Johnson and Miller, being creditors of Hollis, having seperate demands against him, went in pursuit of and overtook him in Pennsylvania, where they respectively obtained process, from a justice's court and recovered judgments against him, on which executions were issued, by virtue of which he was arrested and taken into custody. To obtain his liberty he paid Johnson the amount of his .judgment and turned out certain personal property to Miller in satisfaction of his judgment. The property thus turned out belonged to Hollis in Chenango county when he absconded, and it was brought back into that county where it was demanded of him by the plaintiffs in that action, who had been appointed trustees of the estate of Hollis. The demand not having been complied with, the action was commenced to recover the value of the property. Upon the trial of the action the court charged the jury that if the property was removed from this State, and the defendants knew that Hollis was an absconding debtor at the time when they received it from him in Pennsylvania, he and they being citizens of this State, and the property being received after the publication of the notice of the issuing of the attach-

ment, they were liable for it, whether it was removed from this State before or after the publication of the notice, and that the legal proceedings had in Pennsylvania were no protection to the defendants. The jury found a verdict for the plaintiffs, and the defendants took the case by writ of error to the Supreme Court, where the judgment was reversed, COWEN, J., writing the opinion. He held that the act under which the attachment against Hollis was issued was in the nature of a bankrupt law, and that the assignment of Hollis' property to trustees was *in invitum*, and therefore inoperative outside of this State; and he claimed that it was decided in the case of *Abraham* v. *Plestoro* that an assignment *in invitum* under the law of one State or nation has no operation in another, even with respect to its own citizens; that the bankrupt, a subject of the very country under whose laws he was proceeded against, may, on crossing the territorial limits of such country, dispose of the property which he has brought with him, and may withhold it entirely from the creditors who are proceeding against him in the foreign jurisdiction. We think we have already shown, that, at least, it cannot be known that such was the decision in *Abraham* v. *Plestoro*. As neither he nor either of his associates was a member of the court which rendered that decision, he had no better means of knowing what was decided thereby than we have, and we cannot concur in his views in reference thereto. But we are left by his opinion at a loss to determine whether he meant to deny all force and effect to the title of statutory trustees or assignees appointed in a foreign country, or merely as against creditors pursuing their debtor for the collection of their debts. From the fact that he cited, as authorities, Kent's Commentaries and Story on the Conflict of Laws, and from certain expressions and qualifications contained in his opinion we are inclined to think that he did not mean to lay down an unqualified and universal rule that an *in invitum* title under bankruptcy proceedings in one country can have no force and operation whatever in another country. It was not necessary for the decision of that case to lay down such a rule, as the defendants there simply did what was lawful in the State of

Pennsylvania, under its laws, to procure payment of their debts. The point decided is properly stated in the head-note as follows : " The property of an absconding debtor taken by him from this State and transferred by him in another State in satisfaction of a judgment there rendered against him was not subject to the control of the trustees of his estate after the property was brought back to this State, although he and the creditor to whom the transfer was made were at the time residents of this State, and the transfer was made after the publication of the notice that an attachment had issued." The question we are now considering, therefore, still remained undecided, and again came under elaborate discussion in *Hoyt* v. *Thompson* (5 N. Y. 320), where effect was given in this State to the title of an assignee from statutory trustees appointed in another State, and Judges RUGGLES and PAIGE approved the rules of law announced by PLATT, J., in *Holmes* v. *Remsen*. RUGGLES, J., said that until the decision of *Abraham* v. *Plestoro*, " it had been uniformly held in this State, that in virtue of comity, the assignees of a foreign bankrupt were entitled to sue for, and recover debts due to the bankrupt within this State, except where the claim of the assignee came in conflict with creditors in this State claiming under attachments against the bankrupt's property," and that it is a mistake to suppose that that case established in its strictest sense, and without qualification, the doctrine that a foreign assignment in bankruptcy is absolutely inoperative and void in this State, and that it was impossible to say that that case was decided on grounds affecting the question we are now considering, and he dissented from the decision in *Johnson* v. *Hunt* so far as it was founded upon a different view of the case of *Abraham* v. *Plestoro*. Judge PAIGE, while expressing some views seemingly in accordance with those expressed by Judge COWEN in *Johnson* v. *Hunt*, yet said : " Where neither the rights of domestic creditors or of foreign creditors proceeding against the property under our laws are involved, the foreign assignees may be permitted to sue in our courts for the benefit of all the creditors on principles of national comity without a surrender of the

principle that a foreign statutory assignment does not operate a transfer of the property in this State. Allowing foreign assignees to sue in our courts when neither the rights of our own creditors, nor the rights of foreign citizens pursuing the remedies afforded by our laws will be prejudiced, may be regarded as a mere manifestation of respect for a foreign nation accorded upon principles of national courtesy, and not as a concession that the assignment under which the assignees claim has under our laws any force or validity in this State." But the question as to the effect in this State of a foreign statutory assignment and the rights of the assignee here was again left undecided, the judges who did not write expressing no opinion in reference thereto. A motion for a reargumeut was made in that case (19 N. Y. 207), and upon that motion, COMSTOCK, J., wrote an opinion in which he said that "the comity which is due to a sister State may require that the assignee of an insolvent person or corporation in that State should be allowed to sue a debtor here; but neither justice nor comity demands that the foreign law should be recognized to the extent of divesting the titles of our own citizens fairly acquired." In *Willitts* v. *Waite* (25 N. Y. 577), it was held that statutory receivers appointed in Ohio could not enforce their title to the property of the insolvent in this State against creditors subsequently attaching it here, under our laws. In that case, while SUTHERLAND, J., was of opinion that from comity the courts of this State should recognize and allow some effect to a foreign involuntary bankrupt proceeding, yet he erroneously said that he understood that a title under such proceedings "would not be recognized by the courts of this State, even when the question arises entirely between the bankrupt and his assignees and creditors all residing in the country under whose laws the assignment was made." ALLEN, J., writing in the same case, said: "A *quasi* effect may be given to the law (of a foreign State) as a matter of comity, and interstate or international courtesy, when the rights of creditors or *bona fide* purchasers, or the interests of the State do not interfere, by allowing the foreign statutory or legal transferee to sue for it in the courts

of the State in which the property is;" and that "the State will do justice to its own citizens so far as it can be done by administering upon property within its jurisdiction, and will yield to comity in giving effect to foreign statutory assignments, only so far as may be done without impairing the remedies or lessening the securities which our laws have provided for our own citizens." The rule, as stated by Judges PLATT, RUGGLES, ALLEN, and other eminent jurists, whose opinions we have quoted, were also fully recognized in the following cases. (*Petersen* v. *Chemical Bk.*, 32 N. Y. 21; *Kelly* v. *Crapo*, 45 id. 86; *Osgood* v. *Maguire*, 61 id. 524; *Hibernia Bk.* v. *Lacombe*, 84 id. 367; *Matter of Bristol*, 16 Abb. Pr. 184; *Runk* v. *St. John*, 29 Barb. 585; *Barclay* v. *Quicksilver Mining Co.*, 6 Lans. 25; *Hooper* v. *Tuckerman*, 3 Sandf. 311; *Olyphant* v. *Atwood*, 4 Bosw. 459; *Hunt* v. *Jackson*, 5 Blatchf. 349.)

From all these cases the following rules are to be deemed thoroughly recognized and established in this State: (1) The statutes of foreign States can in no case have any force or effect in this State *ex proprio vigore*, and hence the statutory title of foreign assignees in bankruptcy can have no recognition here solely by virtue of the foreign statute. (2) But the comity of nations which Judge DENIO in *Petersen* v. *Chemical Bank* (*supra*) said is a part of the common law, allows a certain effect here to titles derived under, and powers created by the laws of other countries, and from such comity the titles of foreign statutory assignees are recognized and enforced here, when they can be, without injustice to our own citizens, and without prejudice to the rights of creditors pursuing their remedies here under our statutes; provided also, that such titles are not in conflict with the laws or the public policy of our State. (3) Such foreign assignees can appear and, subject to the conditions above mentioned, maintain suits in our courts against debtors of the bankrupt whom they represent, and against others who have interfered with, or withhold the property of the bankrupt.

If it be admitted, as it must be under the authorities cited, that Schofield can, as assignee of Pendle & Waite, have a stand-

ing in our courts and that his title will be so far recognized here that he can sue the debtors of that firm to recover the amount owing to the firm, why may he not sue the bankrupts? If the assignee could sue Haynes & Sanger to recover what they owed the bankrupts, why can he not be permitted to sue the bankrupts for money or property placed in their hands to pay the debt? If he could sue Haynes & Sanger, why could he not sue their assignee, although a member of the bankrupt firm, to recover the money placed in his hands to pay their debt? No principle of justice, no public policy requires the courts of this State to ignore the title of this assignee at the instance of one of the bankrupts. No injustice will be done to Waite if this money be taken to pay his creditors, and public policy does not require that the courts of this State should protect him in his efforts either to cheat his creditors or his partner. If it be conceded, as it must be, that the title of a foreign statutory assignee is good in this State for any purpose against anybody, it seems to us that it ought to be held good against the bankrupt against whom an adjudication in bankruptcy has been pronounced which is binding upon him.

Before such an adjudication can be held to be efficacious in a foreign country to transfer title to property, the bankrupt court must have had jurisdiction of the bankrupt either because made in the country of his domicile or because he, although domiciled elsewhere, submitted to the jurisdiction or in some other way came under the jurisdiction of the bankrupt court. Here Pendle & Waite did most of their business in England. Most of their assets and of their creditors were there, and while Pendle alone was domiciled there, Waite went there and submitted to the jurisdiction of the Bankrupt Court and exposed himself to the operation of the English law. He is therefore bound by the adjudication of the court as he would have been if domiciled there, and the judgment had been in a common-law court upon any personal cause of action.

The decisions in the Federal courts, and in most of the other States, are in harmony with the views we have expressed; and

so are the doctrines of all the great jurists who have written upon the subject of private international law. (2 Bell's Comm. 681, 687; Wheaton's Int. L. [8th ed., by Dana], §§ 89, 90, 91, 144 and note; 2 Kent's Comm. 405; Wharton's Confl. of Laws, §§ 353, 368, 391, 735, 736; Story's Confl. of Laws, §§ 403, 410, 412, 414, 420, 421.)

There are but two cases in this State which really hold any thing in conflict with these views, and they are *Mosselman* v. *Caen* (34 Barb. 66; N. Y. Sup. Ct. [4 T. & C.] 171). In the first case the action was by foreign trustees, appointed in bankruptcy proceedings, to recover goods in the possession of the defendant in this country, and the plaintiffs recovered. The defendant appealed, and sought to reverse the judgment, upon the ground that the plaintiffs did not, as trustees, have any title to the property. The judgment was affirmed, on the ground that the defendant did not raise the question of title at the trial. But the judges writing were of opinion that the plaintiffs did not have any title to the bankrupt's property located here, and one of them (SUTHERLAND, J.) stated that the case of *Abraham* v. *Plestoro* (3 Wend. 538), confirmed by *Johnson* v. *Hunt*, " would seem to be conclusive upon the question, whether our courts will recognize or enforce a right or title acquired under a foreign bankrupt law or foreign bankruptcy judicial proceedings. The case of *Abraham* v. *Plestoro* was certainly very broad in its repudiation of foreign bankruptcy proceedings, and went much further than the case of *Holmes* v. *Remsen* (20 Johns. 229); but I think it must be deemed conclusive authority for saying, that had the defendant raised the question by demurrer, or on the trial, it must have been held that the plaintiffs could not maintain this action." In the second case DAVIS, P. J., writing the opinion of the court, said : " It seems to be the settled law of this State that our courts will not recognize or enforce a right or title acquired under a foreign bankrupt law, or foreign bankrupt proceedings, so far as affects property within their jurisdiction, or demands against residents of the State." These two cases are unsupported by authority, and are, we think, opposed to sound

principles, and are in conflict with the current of authority in this State.

We are, therefore, of opinion that Schofield was competent to appear upon the accounting to protect the interests of the bankrupt estate which he represented, and that, upon the facts as they appear in this record, his objection to the allowance of the payment made by the assignee to himself ought to have prevailed, and that he should be recognized as a creditor for the amount of such payment.

It follows that the orders of the General and Special Terms should be reversed, and, as the facts may be varied or more fully presented upon a new hearing, the matter should be remitted to the Special Term for further proceedings upon the same or new evidence, in accordance with the rules of law herein laid down, and that the appellant should recover from the respondent costs of the appeals to the General Term and to this court.

All concur.

Ordered accordingly.