## UNREASONABLE OCCUPANCY OF STREET WITH RAILWAY TRACKS.

Court of Appeals for Hamilton County.

CITY OF CINCINNATI V. PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, December 6, 1915.

*Railways—Laying of Tracks in Streets—Occupation of Street by Five Tracks Unreasonable—Rights Acquired by Appropriation Limited to Such as Council Might Grant—Authority of City Solicitor to Institute Injunction Proceedings.*

1. There is no power or authority in a municipal council to grant the right to a railway company, either by ordinance or agreement with the company, to occupy, incumber and use a street by crossing it with five tracks connecting with a railway yard and in reality becoming a part of the yard, particularly where access to the yard can be had without thus occupying the street; nor could the right so to do be acquired by appropriation.

2. There is ample authority in Section 4311 for the bringing by the city solicitor of injunction proceedings against the unreasonable occupation of a street with railway tracks, regardless of failure on the part of council to authorize him so to do.

*Walter M. Schoenle* and *Constant Southworth,* City Solicitors, for plaintiff.

*Lawrence Maxwell* and *Joseph Graydon,* contra.

GORMAN, J.

The plaintiff brought this action in the common pleas court to enjoin the defendant from laying railroad tracks across Ludlow street, one of the dedicated and improved streets of the city, and from obstructing said street; and it also asked for a mandatory injunction requiring the defendant company to restore said Ludlow street, its sidewalks and gutters, to their former condition. The cause is here on an appeal from a judgment of the common pleas court.

It is claimed by plaintiff in its petition that the defendant is proceeding to lay four or five tracks and switches across and in

Ludlow street from east to west between Front street and the Ohio river, and has in furtherance of said work torn up the boulders in the street, changed the grade of some portions of the street, destroyed the sidewalks and the west gutter and partly destroyed the east gutter of said street, and piled on said street large quantities of earth and other debris, thereby obstructing the street and rendering it unfit for public travel, and has otherwise damaged said street and materially interfered with and impaired its usefulness; and that this has been done and is being done without legal right or authority and in violation of the rights of plaintiff and the public in and to said Ludlow street.

The defendant by an amended answer denies that it has unlawfully occupied said street; but says that its occupation of said street and its right to lay tracks across the same is lawful by virtue of certain ordinances and resolutions of the council of the city of Cincinnati adopted January 1, 1864; May 16, 1879; April 23, 1906, and especially by virtue of an ordinance adopted July 17, 1905, number 984, which ordinance in substance granted permission to defendant company to construct and maintain three tracks and switch leads for two additional tracks across Ludlow street south of Front street, said three tracks and the leads running from three separate points from the west side of said Ludlow street and converging toward a common point at the southeast corner of Front and Ludlow streets and connecting with the track at present laid in the center of Front street at a point one hundred and fifty feet east of Ludlow.

Defendant avers that it accepted said ordinance August 11, 1905, and has complied with and is now ready and prepared to comply with the provisions thereof.

By reply the plaintiff challenges the validity of said ordinance and denies that it is binding upon the city of Cincinnati, and denies the power or authority of its council to grant the defendant the right to lay said tracks.

The evidence adduced on the hearing in this court shows that the tracks to be laid across Ludlow street are to connect certain yards of defendant with a connection track in Front street, which has been laid in said street for more than forty years.

While the ordinance purports to grant the right to lay five tracks across the street—three tracks and two leads—it is claimed that but four tracks are intended to be laid at this time. A plat offered in evidence shows that not only will these four tracks be laid across the street, but there will also be placed in the street two switches whereby cars may be switched or shunted from any one of these four tracks onto any one of the other three. It also appears that just west of Ludlow street and to be connected with these four tracks across the street, is located a railroad yard of the defendant occupying a whole block, from Ludlow on the east, to Broadway on the west, and from Front street on the north to Giffin street on the south; that there are at present four tracks in said yards, and the purpose of extending these four tracks into Ludlow street and constructing switches therein is to utilize all of the space in said yard for storage tracks, instead of placing switches within the yard limits. If these four tracks and the two switches can not be laid in Ludlow street then in order to use said yard provision must be made within the limits of the yard property for switches and leads, thereby curtailing the capacity of defendant's yard. Indeed, it is manifest that these tracks and switches proposed to be laid in Ludlow street are but a continuation of the four tracks in defendant's yard, and if permitted to be laid the entire width of Ludlow street will become as much a part of defendant's yard as that portion thereof west of Ludlow street in which its four tracks are laid; so that under whatever guise the grant to lay these tracks was made, they are really intended to be used for and as a part of defendant's yard. The switching and shunting of cars into this yard and upon the four tracks now therein must necessarily take place more or less in Ludlow street and east of the street, and if this should be done to any considerable extent the use of the street at this point will be very materially impaired.

It was shown by the evidence that Ludlow street is one of the main arteries of travel leading to the river. In the past, when a ferry line plied between Cincinnati and Newport, the boats landed at the foot of Ludlow and there was a great deal

more traffic on this street than now, but now there is considerable traffic in the street south of Front street, and likely to be much more in the future if the street can be kept open, clear and free from obstructions, because of the fact that the government of the United States proposes to maintain at all times a nine-foot stage of water along the entire river front of Cincinnati, and the river at the foot of Ludlow street is a desirable and unusually advantageous place to tie up boats for loading and unloading and for repairs. It further appears that there is no access to the river by any street east of Ludlow for a distance of about two miles, and that an impairment of the use of this street would be a material hindrance to river traffic.

It is claimed by the city solicitor that the council had no power or authority to grant, by ordinance or otherwise, the right to defendant to lay these tracks, and that being the only claim of right which the defendant asserts, if this contention be sound, then the defendant company is a trespasser in this street when it undertakes to lay these tracks under no other claim of right than is given by this ordinance.

It is further claimed by the city's counsel that even if the council had the authority or power to grant permission to lay these tracks, nevertheless the use proposed to be made of the street by means of these tracks is such as to practically exclude therefrom the traveling public and renders such use unreasonable and therefore not permissible. If the council had the power to grant this permission to lay these tracks, it must be by virtue of some statute, for it is a well settled principle of law that municipal corporations (and of necessity their councils) have such powers and only such as are expressly granted or which are necessarily implied in order to enable them to carry into effect the express grants of power.

By the provisions of Section 3714, General Code, the council shall have the care, supervision and control of public highways, streets, etc., and shall cause them to be kept open, in repair and free from nuisance. But this grant of power to council does not carry with it the power to grant a right to a railroad company to occupy or incumber and use the streets of a municipality.

*Louisville & Nashville Railroad Company* v. *City of Cincinnati*, 76 O. S., 481. As was said by Summers, J., in deciding this case, on page 497:

"Public streets, squares, landings and grounds are held in trust for the public, and being so held they are, for the uses for which they were dedicated or acquired and subject to the property rights of abutting owners, under the absolute control of the legislative power of the state. In this state the care, supervision and control of public highways, streets and grounds in cities is delegated to the council, but notwithstanding this delegation of general power over them, the state, now and since 1852, has in express terms delegated to cities the power to grant to railroad companies the right to occupy or incumber and use them, or in express terms has made the right subject to agreeing with the municipal authorities as to the manner in which they are to be occupied, so that the general power of care, supervision and control, that has been delegated does not carry with it the power to grant such right, and a grant by the council of a city of permission to occupy the streets and public grounds does not confer such right."

Counsel for defendant has failed to point out any statute which authorizes council to grant permission to lay these tracks, and since such permission can not be granted under Section 3714, General Code, we are compelled to examine further to see if there exists any statute which authorized council to make this grant.

If power has been conferred on council to grant permission to lay tracks in a street or across a street, or to agree upon the terms and conditions upon which this may be done, it appears to us it must be sought for in the provisions of Sections 8763 to 8766 inclusive (formerly Sec. 3283, R. S.). In substance these sections provide that if in the location of any part of a railroad, etc., it be necessary to occupy with a surface or elevated track, etc., any public road, street, etc., the municipal corporation or public officers owning or having charge thereof, and the company, may agree upon the manner, terms and conditions upon which it can be used and occupied. If the parties are unable to agree thereon, etc., the company may appropriate so much thereof as is necessary for the purposes of its road, in the

manner and upon the terms provided for the appropriation of the property of individuals.

In the case of *Rockport* v. *Railroad Co.*, 85 O. S., 73, the Supreme Court held that under the above sections—then Section 3283, Revised Statutes—in the words of Judge Donahue, announcing the opinion of the court, on page 82:

"It necessarily follows that the railway company can acquire no further rights by appropriation than the village council could grant by ordinance or contract."

Furthermore, the court in this case just cited said on pages 84, 85 and 86, in so many words, that a railroad company is not authorized to appropriate a part of a street, for all of its purposes, but that under the above cited sections (formerly Section 3283, R. S.), its right to appropriate a portion of a street is limited to the location of any part of the railroad itself, not for the purposes of a yard or approaches to a yard. On this point the court uses this language on the pages above referred to:

"Section 3283, Revised Statutes" (now Sections 8763 to 8766, G. C., inclusive), "under favor of which these proceedings were brought, does not authorize the appropriation of streets for any and all purposes incident to the operation of a railroad, but only for the location of any part of the railroad itself. In this respect it differs materially from Section 3281" (now 8759-8760, G. C.), "authorizing the appropriation of private property for depots, workshops, roundhouses and water stations. In the construction and location of the main line of road a railroad company can not but meet with conditions that are beyond its control, as, for instance, the crossing of streets and highways, and, therefore, notwithstanding that the crossing of these streets and highways may interfere somewhat with the public travel by foot passengers and ordinary road vehicles, yet the Legislature has recognized the fact that of necessity the railroad company must be given the right to cross the same, not merely because it also furnishes a mode of public travel, but because it would be impossible to construct railroads if such rights were not granted. But in the location and establishment of its yards, depots, workshops, roundhouses and water stations, the railroad company can largely guard against these contingencies and it is very evident that Section 3283, Revised Statutes" (now 8763-

4-5-6, G. C.), "intends to require that it should do so, otherwise the language. of that section would not be different from the language found in Section 3281, Revised Statutes" (Sections 8759-60, G. C.), "Section 3283 does not in terms authorize a railroad company to condemn or appropriate public streets or roads for these purposes, and all statutes granting to corporations the right of eminent domain, which is an attribute of sovereignty, must be strictly construed. (*Currier* v. *M. & C. R. R. Co.*, 11 O. S., 228; *Atkinson* v. *M. & C. R. R. Co.*, 15 O. S., 21; *Platt* v. *Penn. Company*, 43 O. S., 228; *Ravenna* v. *Penn. Co.*, 45 O. S., 118.) Without recourse to this rule of construction it clearly appears that Section 3283 applies only to the railroad itself if it should be found necessary in the location of the same or any part thereof. All these other things that are incident to and undoubtedly absolutely necessary to be maintained by a railroad company for the purposes of operating its road are not included in the term railroad as used in this section; for if depots, workshops, roundhouses and water stations could be constructed upon public streets, it would amount to an absolute abandonment and destruction of the public rights therein. It is equally clear that railroad yards are not within the contemplation of this statute, and that it is not intended thereby to authorize a railroad company to construct its yard over and across or along streets and highways, either with the consent of the municipal authorities or by appropriation of the same."

In this case from which we have quoted at length the court had under consideration the question of the power of a railroad company to appropriate by condemnation proceedings the right to lay, maintain and operate, in addition to its two main tracks then constructed and maintained thereover, five additional sidetracks or turn-outs along, upon and across Settlement road and Linndale road, two streets of the village of Rockport, Ohio, at the place where said roads intersect. In the trial court it was shown that these additional five tracks were to be used for egress and ingress to the railroad company's yards for the purpose of switching cars from one track to another, for making-up and separating trains of cars and for the storage of cars. The trial court on the preliminary hearing found that the appropriation sought to be made was an unreasonable interference with the rights of the public in the use of the highways and would be

destructive of the public use of said highways, and that the appropriation was not necessary for the purpose of plaintiff's railroad, and thereupon dismissed the railroad company's petition to appropriate. The judgment of the trial court in thus disposing of the railroad company's petition was sustained by the Supreme Court, which in doing so employed the language above quoted.

Now, if we apply the principles enunciated in this case to the facts in the case at bar, we have a situation almost identical with the Rockport case, with these differences: In the Rockport case the railroad company already had two main tracks upon and across the streets, which tracks were a part of its main railroad line, and it was seeking an easement for five additional tracks on the streets on what it claimed to be its right-of-way, whereas in the case at bar the railroad company has a main track, being the Front street connection track, across Ludlow street, and is seeking the right to lay these four or five additional tracks so as to be able to reach its yards west of Ludlow street, and to switch in the street, and to make up and break up trains in the yard and on this street. In other words, these tracks are to be used solely as a part of the railroad company's Front street yard.

If there be any difference between this case and the Rockport case it would appear that there is less need for an easement across Ludlow street than there was across the streets in the Rockport case. The tracks are to be used in connection with the Front street yard and *not as a part of the main line* as was said in the Rockport case.

We are therefore clearly of the opinion, following this Rockport case, that the railroad company has not the power or authority to appropriate an easement for these tracks across Ludlow street for the purposes for which they are intended to be used. Nor could the railroad company acquire by agreement with the city council through an ordinance or otherwise that which it could not acquire by condemnation proceedings, for, as was said by the court on page 82 of the Rockport case:

"The property (the street) having been devoted to a public purpose, the principle obtains that the public use is the domi-

nant interest in the street, and *the village authorities could not grant any right to the railroad company under the provision of Section 3283, Revised Statutes, that would* be destructive of these rights or *amount to a material or substantial interference with the same,"* etc.

In *Railroad Company* v. *Defiance,* 52 O. S., 262, the Supreme Court in discussing the powers of council to grant a right to lay tracks in or across a street under Section 3283, Revised Statutes, says (p. 309):

"The object of the appropriation is to acquire such use of the street, etc., as could have been granted by agreement; and no greater use can be obtained in the one mode than in the other; the right acquired in either is limited to the use of so much of the street as may be necessary for the purposes 'of *the railroad.*'"

To the same effect are: *L. S. & M. S. Ry. Co.* v. *Elyria,* 69 O. S., 414; *Ravenna* v. *Penn. R. R. Co.,* 45 O. S., 118; *Railroad Co.* v. *City,* 76 O. S., 481.

It is also manifest from the evidence in this case that the proposed use of Ludlow street for these switches and tracks would constitute a material interference with the public use of the street, on account of the number of these tracks and switches and the movement of cars thereon; and in view of the fact that access to the railroad company's yard can be had from Front street, as shown by the evidence, we conclude that this proposed use is so unreasonable that even if there were power to appropriate or to grant the use by council, a court, hearing an application to permit these tracks to be laid, or an objection by the city authorities to prevent the laying thereof under an alleged grant from the council, should restrain the laying thereof.

It is urged by defendant's counsel that the city solicitor had no authority to bring this action without being authorized so to do by the legislative body (the council) of the city. It is extremely unlikely that the city council, after endeavoring to give away the city's street to the defendant company, would call upon the solicitor to take legal steps to prevent the doing of that which it had given permission to do. We think Section

4311, General Code, affords ample authority for the solicitor to bring this action regardless of the will or wishes of the council, and that in so doing he is exercising the high prerogative lodged in him by the Legislature to restrain the abuse of the corporate powers of the city and to prevent the execution or performance of an alleged contract in contravention of the laws.

These proceedings were brought in the same manner and under like circumstances shown to have existed in the case of *Cincinnati* v. *L. & N. R. R. Co.*, 76 O. S., 481, where no question was made of the solicitor's right to bring the action on behalf of the city.

We are satisfied that a mandatory injunction is the proper remedy to restore Ludlow street to its former condition. *Cincinnati* v. *L. & N. R. R. Co.*, 76 O. S., 481.

The judgment of this court is that the prayer of the petition be granted at the costs of the defendant.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.