## JAMES A. LOW, Administrator, *v.* JOHN M. HORNER.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 26, 1896.     DECIDED NOVEMBER 30, 1896.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE PERRY, IN PLACE OF WHITING, J., DISQUALIFIED.

Although a judgment is assets, for the purpose of administration, where the record is, yet, if the judgment debtor removes to another jurisdiction, administration may be granted there also, and the administrator may there maintain an action upon such judgment.

OPINION OF THE COURT BY FREAR, J.

This is an action by the plaintiff as Hawaiian administrator with the will annexed of the estate of Thomas Newell, deceased, upon a judgment recovered by the decedent in his life time against the defendant herein in the State of California, where the decedent was domiciled at the time of his death. The Circuit Court tried the case, jury waived, and rendered judgment for the plaintiff in the sum of $4,109.02 and interest thereon from the commencement of the action, and costs. The case comes here on defendant's exceptions to the final decision of the trial court, and to all the findings of law and fact therein, and to the overruling of a demurrer which had been interposed. The overruling of the demurrer appears to have been correct, and the exception thereto has been practically abandoned in this court and need not be further considered. The only question raised under the exception to the final decision and the findings therein is whether the appointment of the plaintiff as administrator was void.

Defendant's counsel contends that it affirmatively appears upon the face of the probate record that the only grounds, if any, upon which the court could or did exercise jurisdiction in the appointment of an administrator was the existence of the unsatisfied judgment obtained in California and the presence of the judgment debtor here; that, as matter of law, a judgment is assets for the purposes of administration only where the judgment record is, that is to say, in this case, in California; and that therefore the probate court here acted without jurisdiction and that the appointment was void. The trial court ruled that the appointment by the probate court could not be thus collaterally attacked, and this is the ruling that is now claimed to be erroneous.

Considering the state of the law upon the subject of collateral attack, and in view of the circumstances of this case, we prefer not to go into the question whether the ruling of the trial court was erroneous or not, but to concede to the defendant, for the purpose of argument, that it was erroneous; in other words, that the appointment of an administrator may be collaterally attacked for want of jurisdiction appearing upon the face of the record; also that that which is relied upon in this case as showing want of jurisdiction does appear upon the face of the record, and to base our decision upon the conclusion to which we have come, that that which is relied upon does not show want of jurisdiction. This is purely a question of law and one that may be decided by this court, although not passed upon by the trial court, in order to show that the ruling of the Circuit Court, if erroneous, was not prejudicial to the defendant. For if the sole ground upon which he sought to attack the probate decree was untenable he could not have been prejudiced by not being allowed to make the attack. The question is, whether administration may be granted upon a judgment only where the record is, or may it also be granted where the judgment debtor is, if in a different jurisdiction from that where the record is?

The American case most frequently cited on this question, *Vaughn v. Barret,* 5 Vt. 333, states the rule thus: "Judgments

are *bona notabilia* where the record is; specialties, where they are at the time of the creditor's decease, and simple contracts where the debtor resides." Cases, all English, are cited in support of each of these propositions. The English case most generally referred to for a statement of the rule, *Att'y-Gen'l v. Bouwens*, 4 M. & W. 171, puts it thus: "As to the locality of many descriptions of effects, household and movable goods, for instance, there never could be any dispute; but to prevent conflicting jurisdictions between different ordinaries, with respect to choses in action and titles to property, it was established as law that judgment debts were assets, for the purposes of jurisdiction, where the judgment is recorded; leases, where the land lies; specialty debts, where the instrument happens to be; and simple contract debts, where the debtor resides at the time of the testator's death."

This rule has been repeatedly stated in text books and decisions, but generally if not always in substantially the affirmative form above set forth; but on the doctrine of *expressio unius est exclusio alterius,* and since the object is to prevent conflicts of jurisdiction, it would seem to be a plain inference that the converse of the rule were also true, namely, that if administration may be granted where the assets are as stated in the rule, it should not be granted anywhere else, as, for instance, where the debtor happens to be at the time, if in another jurisdiction, and, no doubt, this has very generally been considered a proper inference. And for this reason we feel that our grounds for arriving at a different conclusion should be set forth at greater length than would otherwise be necessary.

It may be observed, in the first place, that the converse of the rule is not a necessary, although a natural, inference. In the second place, the rule itself is somewhat artificial and was adopted at an early date in England as a practical rule for avoiding conflicts of jurisdiction, and under such circumstances that a statement of the rule in the affirmative answered most practical purposes. There was little or no occasion to consider its converse. But under recent conditions of greater freedom of movement

in population and personal property, courts have been obliged to consider the converse of the rule in a number of cases, and have found that while the rule itself may be unobjectionable as far as it goes, its converse cannot be maintained without resulting either in a failure of justice or in a conflict with another and unquestioned rule of law, namely, that an administrator cannot sue as such in a jurisdiction other than that in which he was appointed. The courts have therefore declined to follow the converse of the rule, whether in respect of simple contracts, specialties or judgments.

Take, for instance, the case of simple contract debts. These, by the rule, "are assets where the debtor resides at the time of the testator's death." But suppose the debtor removes to another jurisdiction before administration has been obtained or suit brought in the jurisdiction in which he was when the decedent died. Then, if the converse of the rule is held, that is, if administration cannot be granted in the jurisdiction into which the debtor has removed, either the debt cannot be recovered because the debtor cannot be reached and justice must fail, or else the administrator appointed in the jurisdiction in which the debtor was at the time of the decedent's death must be allowed to sue in the foreign jurisdiction into which the debtor has gone, without first obtaining letters there, and yet the authorities hold, even in the same breath in which they state the rule in question, that this cannot be done. See, for instance, *Att'y Gen'l v. Bouwens, supra*. It is therefore held that administration may be granted and suit brought wherever the debtor may be at the time, even though in another jurisdiction than that in which he was at the time of the decedent's death. *Pinney v. McGregory*, 102 Mass. 186.

So in the case of specialties. These, by the rule, "are *bona notabilia* where they are at the time of the creditor's decease." But suppose the debtor resides at that time in, or subsequently removes to, another jurisdiction. Then, if the converse of the rule is held, the debtor cannot be reached and justice must fail. Cases of this kind, naturally, have not often come before

the courts. But *Whyte v. Rose,* 3 Ad. & Ell., N. S. 493, was just such a case. The decedent died in Nova Scotia, the specialty was in Ireland and the debtor in England. An administrator was appointed in England and brought suit there. The Court of Queen's Bench, in which the action was brought, gave judgment for the defendant on the ground that the appointment of the administrator in England was void for the reason that, as stated in the rule, the specialty was *bona notabilia* in Ireland. But, on appeal, the Court of Exchequer Chamber reversed this judgment, and held that administration might be granted in England and suit be brought there where the debtor was, whether administration had been granted or not in Ireland where the specialty was, and that none of the former decisions were inconsistent with that view. This was the actual decision of the court in England where the rule originated and after elaborate argument by counsel on both sides upon numerous former cases bearing upon the subject.

So in the case of judgments, which, by the rule "are *bona notabilia* where the record is." It is obvious that the rule must be the same in respect of judgments as in respect of specialties, and, therefore, referring to *Whyte v. Rose, supra,* if administration may be granted and suit brought in England where the debtor is, upon a specialty in Ireland, so, referring to the case at bar, administration may be granted and suit brought in Hawaii where the debtor is, upon a judgment in California. The rule is arbitrary, and there is no more reason for holding to its converse in one case than in another. And the rule itself places specialties and judgments on the same footing, giving them a *situs* of their own apart from that of the debtor, apparently because from their solemnity they are regarded to some extent as things visible. Cases of this kind upon judgments would be likely to be even more rare than similar cases upon specialties; but, so far as we know, when they have arisen they have been decided the same way. *Emery v. Hildreth,* 2 Gray 228, was a suit in Massachusetts by an administrator appointed there upon a judgment obtained by the

decedent during his lifetime in Missouri. The defendant denied the sufficiency of the appointment of the plaintiff as administrator. The court held: "Such debt was estate to be administered within this state. * * * The probate court therefore had jurisdiction of the subject." The precise question now involved was, however, not raised or argued by counsel, though passed on by the court and apparently raised by the pleadings, and it may be also that the court had in mind not this precise question at all, but only the question whether a debt as well as tangible property was sufficient to confer jurisdiction. "But in *Swancy v. Scott*, 9 Humph. (Tenn.) 327, the court held that in case a judgment was recovered in a foreign state and then the creditor died and the debtor removed to the state of the application, administration could be granted to recover the claim." Note, 24 L. R. A. 687. See also page 684. Unfortunately we have not access to the full report of this case and can state its substance only at second hand. It seems to have been the subject of discussion in a later case in the same state, but not overruled. Bigelow's Overruled Cases, Supplement, 148.

Thus we find that the converse of the rule has been deliberately rejected by the courts when called upon to actually decide the question, whether in respect of simple contract debts, specialties or judgments. And we know of no decision to the contrary. The cases cited *contra*, whatever may be the first impression, will be found on careful examination to have turned on some other question. For instance, in *Adams v. Savage*, 2 Ld. Raym. 855, the court decided merely that an administrator appointed by the Archdeacon of Dorset could not maintain *scire facias* upon a judgment in the Court of King's Bench, on the ground that the appointment was void as to that judgment, in other words, that an administrator could not sue upon a judgment and in a court outside of the jurisdiction in which he was appointed. So in *Vaughn v. Barret, supra*, the court actually decided merely that an administrator appointed in New York could not sue an inhabitant of Vermont

in Vermont, upon a Vermont judgment, and that therefore (in the opinion of the court) a voluntary payment to the New York administrator would not bar a subsequent action in Vermont by the Vermont administrator.

If the converse of the rule were true, then, as above stated, in order to prevent a failure of justice, an administrator appointed where the property is assets as stated in the rule, should be allowed to bring suit in any other jurisdiction where the debtor is, without first obtaining administration there, just as he could if he were in possession of a negotiable note belonging to the estate and payable to bearer, or as he could if he had already obtained judgment in the jurisdiction of his appointment, for then he could sue as owner of the chose in action and not merely in his representative capacity. For instance, in the case at bar, if administration could not be granted in Hawaii, where the debtor is, then an administrator appointed in California where the record is, ought to be allowed to sue here, for otherwise suit could not be brought at all and the debt could not be collected. But, as we have seen, all the authorities hold that an administrator cannot sue as such outside of the jurisdiction of his appointment. See cases, *supra*. In *Huthwaite v. Phaire*, 1 Man. & Gr. 159, and in *Whyte v. Rose, supra*, in the Queen's Bench, the courts saw that the converse of the rule, if held, logically required that suit should be allowed to be so brought, and they apparently thought that the converse was true and that suit could be so brought, but the question was not actually decided in either case, and in the latter case on appeal to the Exchequer Chamber, the court, as we have seen, reversed the judgment of the Queen's Bench, and, in doing so, said that suit could not be so brought, and the same Chief Justice (Tindal) who delivered the opinion of the court in *Huthwaite v. Phaire*, said in substance that that opinion should not be taken beyond the question actually before the court. See pp. 501, 504.

It may be argued that a failure of justice would not necessarily result from holding that an administrator can be appointed

only in the jurisdiction where the record is, even though the debtor might be in another jurisdiction where suit could not be brought by such administrator, for the reason that the judgment could be assigned by the administrator appointed where the record is, and then suit be brought by the assignee in the foreign jurisdiction. This course has been pursued in some cases. *Low v. Burrows*, 12 Cal. 181, see also *Lewis v. Adams*, 70 Cal. 403; *Peterson v. Chemical Bank*, 32 N. Y. 21, approved in *Johnson v. Wallis*, 112 N. Y. 230. But a right can hardly be said to have an adequate remedy in contemplation of law if it cannot be itself enforced by its owner, but can be realized on only by a sale, and what if, as would often be the case, it could not be sold under the circumstances except at a great sacrifice, or if it were non-negotiable and the debtor were in a jurisdiction in which the assignee could not sue except in the name of the assignor?

The question of real difficulty that generally arises is whether the debtor may be compelled to pay the debt more than once, in case he is sued in different jurisdictions into which he may go, or in case he voluntarily pays in one jurisdiction, and is afterwards sued in another. For instance, if the debtor in this case were obliged to pay the judgment at the suit of an administrator appointed here and should afterwards go to California, could he be obliged to pay the judgment a second time at the suit of an administrator appointed there? The solution of this question would seem to be to hold, not that a debtor cannot be sued where found though in a jurisdiction other than that where the record is or where the specialty or debtor by simple contract was at the time of the decedent's death and so deny justice to the other party, but to hold that a payment once made, at least if made under compulsion by suit, and perhaps if made voluntarily wherever he could be so compelled by suit, is a good defense to a suit anywhere else, and so do justice to both parties. Westlake's Private International Law, Secs. 296-299. Some courts go even further and hold that a voluntary payment to the domiciliary administrator by a debtor in another juris-

diction, is a good defense, if there are no creditors of the decedent in that jurisdiction. *Wilkins v. Ellett*, 9 Wall. 740. Other courts go still further and hold that even if there are creditors in such jurisdiction, such payment is a good defense, if made before the appropriate proceedings have been taken there by such creditors in order to realize on the debt. *Marcy v. Marcy*, 32 Conn. 308, criticizing *Vaughn v. Barret, supra.*

We therefore hold in order to prevent either a failure of justice or a conflict with the rule that an administrator cannot sue outside of the jurisdiction of his appointment, and in accordance with the actual decisions as distinguished from *dicta* and natural but not necessary inferences, that the Hawaiian probate court had jurisdiction to appoint the administrator in this case and that such appointment is valid.

Assuming therefore, but not deciding, that the trial court erred in ruling that the probate decree could not be collaterally attacked for want of jurisdiction, if any, appearing upon the face of the record, the defendant was not prejudiced thereby, for no such want of jurisdiction appears.

The exceptions are overruled.

*Paul Neumann* and *A. S. Hartwell*, for plaintiff.

*Kinney & Ballou*, for defendant.